199 P.3d 437 (2008)
STATE of Washington, Respondent,
v.
Thomas PAGE, Appellant.
No. 36724-6-II.
Court of Appeals of Washington, Division 2.
December 16, 2008.
Thomas Edward Doyle, Attorney at Law, Hansville, WA, for Appellant.
Edward P. Lombardo, Mason County Prosecuting Attorney, Shelton, WA, for Respondent.

PART PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 Thomas Page appeals his conviction for second degree unlawful possession of a firearm, *438 arguing that the trial court erred in admitting evidence of his incriminating statements without proving the corpus delicti of the crime. He also argues that his trial counsel was ineffective in not raising the corpus delicti issue below. Finally, Page argues for the first time on appeal that the State did not include all of the elements of the crime in its charging information. Finding no reversible error, we affirm.

FACTS
¶ 2 One afternoon, police arrested Page at his home for a domestic violence incident and transported him to the police station. While in his holding cell, Page got Officer Daniel Patton's attention and explained that there was a .38 caliber handgun hidden in his home and that he was concerned that children might have access to it. Patton and Officer Warren Ohlson removed Page from his holding cell and spoke to him about how they might retrieve the weapon; Page described where it was hidden. They also discussed that it was unlawful for Page to possess firearms because he had a prior conviction. The three agreed that Page would contact his brother, Edward Page, and have him retrieve the firearm and turn it over to the officers.
¶ 3 Page used a telephone at the police station to call Edward, with Patton and Ohlson in the room. Ohlson testified that Page "was very specific about the location of the firearm and about the fact that [the police] were looking to charge him with possession of that firearm." Report of Proceedings (RP) at 38. Patton paraphrased Page's statements as:
You know that little black handgun that I have? Well, the police need it. They're going to charge me with another crime for having it, so they need you to bring it down here. You know, if you bring it down here, they're going to charge me with this crime, so, you do whatever you want to do, but that's where the gun is.
RP at 22.
¶ 4 At that point, the officers immediately hung up the phone, returned Page to his holding cell, and drove to the house. They approached the house as Edward was exiting and locking the front door. They asked Edward about the firearm, and he was nonresponsive and confrontational. At trial, Edward described the incident as follows:
Q: What did your brother talk to you about?
A: Hesaying that they wanted a gun.
Q: Okay. Did he explain to you where the gun was?
A: He gave me an idea where it was.
...
Q: And so, what did you do?
A: I went and I locked the house up.
Q: Well, what did you do with the gun?
A: I didn't touch the gun.

...
Q: You never saw a gun?
A: I never touched nothing.
Q: And where is that gun today?
A: I don't know.
Q: You didn't take it?
A: I didn't take it.
RP at 53-54 (emphasis added).
¶ 5 Later that night, Page's wife, Connie Page-Trapp,[1] arrived at the police station after returning from a business trip. She agreed to help Patton and Ohlson search the Page residence for the weapon. They all drove back to the house, and Connie searched the room in which Page had said the weapon was located. The room appeared to be in disarray. Connie did not find the weapon, but she did find an empty handgun case and said, "[I]t's not here." RP at 43.
¶ 6 Connie later testified at trial that she knew nothing about an unsecured firearm in the house before hearing about Page's admission from the police. She had inherited a .38 caliber handgun several months earlier from her parents, but she had given it to her uncle because she did not want it lying around the house. Connie explained that she had not told Page that she gave the handgun away; they had argued a lot about whether to keep other inherited items, and she wanted to *439 avoid further arguments. When the police told her that Page thought there was an unsecured weapon in the house, she said that "[i]t would have been a .38 ... that my husband would have been talking about." RP at 74. Connie testified that she had not seen the weapon since she gave it away several months earlier.
¶ 7 The State charged Page with second degree unlawful possession of a firearm. The information alleged:
In the County of Mason, State of Washington, on or about the 11th day of May, 2007, the above-named Defendant, THOMAS J. PAGE, did commit UNLAWFUL POSSESSION OF A FIREARM IN THE SECOND DEGREE, a Class C Felony, in that said defendant, having previously been convicted in this state or elsewhere of the following crime committed against one family or household member: assault in the fourth degree (Shelton Municipal Court, Cause No. 37589C), did knowingly own or have in his possession or under his control a firearm, to-wit: a .380 caliber pistol, contrary to RCW 9.41.040(1)(b)(i) and against the peace and dignity of the State of Washington.
Clerk's Papers at 50. The cited statute, RCW 9.41.040(1)(b), relates to the first degree offense of unlawful possession, not second degree.[2]Compare RCW 9.41.040(2). At trial, both sides stipulated that Page had a prior conviction after July 1, 1993.
¶ 8 After the State rested, the defense moved to dismiss for insufficient evidence. The trial court denied the motion, explaining that although he thought the evidence was somewhat "skinny," the jury could convict if it believed "that the brother had gone in and removed the firearm." RP at 78.

ANALYSIS

I. Corpus Delicti
¶ 9 Page argues that the trial court erred in admitting evidence of his extrajudicial statements because the State could not establish the corpus delicti of the crime. Page did not raise this issue at trial, so we need not consider the issue directly on appeal. RAP 2.5(a); see State v. C.D.W., 76 Wash.App. 761, 764, 887 P.2d 911 (1995). Page does, however, argue that his counsel ineffectively represented him by failing to raise the corpus delicti issue belowa constitutional issue that Page can raise for the first time on appeal. State v. Greiff, 141 Wash.2d 910, 924, 10 P.3d 390 (2000).
¶ 10 Both the Washington Constitution and the Sixth Amendment of the United States Constitution guarantee the right to effective counsel in criminal proceedings. In re Pers. Restraint of Brett, 142 Wash.2d 868, 873, 16 P.3d 601 (2001). A criminal defendant claiming that his counsel ineffectively represented him must prove that (1) the attorney's representation fell below an objective standard of reasonableness, and (2) the attorney's deficient representation prejudiced him. State v. Reichenbach, 153 Wash.2d 126, 130, 101 P.3d 80 (2004). We presume that counsel was effective and reasonably professional. State v. Lord, 117 Wash.2d 829, 883, 822 P.2d 177 (1991). A defendant establishes prejudice by showing a reasonable probability that the result would have differed but for the counsel's deficient conduct. Reichenbach, 153 Wash.2d at 130, 101 P.3d 80. Where the claim is based on counsel's failure to make a motion or an objection, a defendant must show not only meritorious grounds for the motion but also that the verdict would have differed had the motion been granted. See Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).
¶ 11 Corpus delicti means "body of the crime." State v. Brockob, 159 Wash.2d 311, 327, 150 P.3d 59 (2006). The rule of corpus delicti provides that a trial court may not admit the defendant's incriminating statements unless the State presents independent evidence that corroborates the statements. Brockob, 159 Wash.2d at 328, 150 P.3d 59. In other words, the State must present evidence independent of the defendant's incriminating statement that the crime the defendant described actually occurred. Brockob, 159 Wash.2d at 328, 150 P.3d 59. The rule stems both from the recognition that juries are likely to accept confessions uncritically and from a distrust of confessions because they may be misreported, misconstrued, elicited by force or coercion, based on *440 a mistaken perception of the facts or law, or falsely given by a mentally disturbed individual. State v. Aten, 130 Wash.2d 640, 657, 927 P.2d 210 (1996) (quoting City of Bremerton v. Corbett, 106 Wash.2d 569, 576, 723 P.2d 1135 (1986)).
¶ 12 In considering whether the State has presented sufficient corroborating evidence, we view the independent evidence in a light most favorable to the State. Brockob, 159 Wash.2d at 328, 150 P.3d 59. The State is not required to prove the corpus delicti beyond a reasonable doubt or even by a preponderance of the evidence. Aten, 130 Wash.2d at 656, 927 P.2d 210 (quoting State v. Meyer, 37 Wash.2d 759, 763, 226 P.2d 204 (1951)). Rather, the corroborating evidence is sufficient if it supports a logical and reasonable inference that the crime occurred. Aten, 130 Wash.2d at 656, 927 P.2d 210. Moreover, such evidence must be consistent with guilt and inconsistent with a hypothesis of innocence. Brockob, 159 Wash.2d at 329, 150 P.3d 59 (quoting Aten, 130 Wash.2d at 660, 927 P.2d 210).
¶ 13 Before applying the corpus delicti rule, we first must identify the "independent evidence." Aten, 130 Wash.2d at 657, 927 P.2d 210. The State relies on Page's statements to Edward in their telephone conversation. Although we cannot use the statements in any way that requires us to assume the statements were true or reliable, we can consider the words Page spoke to Edward to explain his brother's conduct. When the police arrived at Page's home shortly after the phone call, Edward was exiting the home and locking the front door; he was surprised to see the police, did not answer them, and appeared agitated and confrontational. Further, when asked at trial what he had done with "the gun," Edward responded that he "didn't touch the gun." RP at 53. He also explained that although the police asked him to allow them to enter the house to get the gun, he refused because they "didn't have a warrant." RP at 55.
¶ 14 The conduct of Page's wife also supports the inference that the .38 caliber handgun had been in the bedroom earlier in the day. The police first contacted Connie by phone and explained their concern about a gun in the home. She told them "[i]t would have been a .38 ... that my husband would have been talking about." RP at 74. When Connie arrived at the police station, she agreed to help the police search for the weapon. At the home, she found the bedroom uncharacteristically in disarray. She also found a small handgun case and explained to the police that the gun was not there.
¶ 15 At trial, Connie testified that she had inherited a .38 caliber handgun from her parents, which she kept in the bedroom. She "imagine[d]" that the gun case she found would have gone with the inherited .38. RP at 73. She had given the gun to her uncle some months earlier but did not explain this to the police because she "wasn't even thinking about that at the time." RP at 73. Thus, Connie's testimony established that the.38 had been in the house. And the trial court, if counsel had raised the corpus delicti issue, would not have been bound by Connie's implausible testimony that she gave the gun away, particularly where she willingly searched for the gun, said it was not there when she found the gun case, and failed to tell the police that she had in fact given the gun away some months earlier.
¶ 16 Construed in favor of the State, this evidence is sufficient to establish a reasonable and logical inference that a handgun had been in Page's bedroom, Edward searched the room for the weapon, found it, and was leaving with it when the police encountered him at the front door. We hold that the State sufficiently proved the corpus delicti by evidence independent of Page's admission in his phone call. Thus, he has not shown that counsel was ineffective for not challenging the admission of his telephone statements.
¶ 17 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON, P.J., and BRIDGEWATER, J.
NOTES
[1] We use Connie's first name for clarity.
[2] In addition, there is no (i) in subsection (1)(b).