[No. 37610-5-II.   Division Two.   May 11, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY D. McPHEE, *Appellant*.

46

48

*Peter B. Tiller* (of *The Tiller Law Firm*), for appellant.

*David J. Burke, Prosecuting Attorney*, and *David Bustamante, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — The State charged Jeffrey D. McPhee with one count of residential burglary, four counts of possession of stolen firearms, and one count of second degree possession of stolen property. A jury acquitted him of residential burglary and two counts of possession of stolen firearms. But the jury was unable to reach a verdict on the remaining two counts of possession of stolen firearms and one count of second degree possession of stolen property. The trial court declared a mistrial and the State recharged McPhee. In a second trial, the trial court dismissed the second degree possession of stolen property count at the end of the State's case. The jury then convicted McPhee of two counts of possession of stolen firearms. McPhee appeals, alleging various double jeopardy and evidentiary insufficiency challenges to his convictions. The State cross appeals, challenging the trial court's dismissal of the possession of stolen property count. We affirm McPhee's two convictions of possession of stolen firearms. We reverse the order dismissing the possession of stolen property other than a firearm and remand for a new trial as to that charge.

## FACTS

¶2 On June 8, 2007, the State charged McPhee with various crimes arising out of a burglary in Pacific County, Washington. Count I alleged that McPhee committed residential burglary on or between January 28 and January 29,

2007, in violation of RCW 9A.52.025.[1] Count II alleged that McPhee knowingly possessed a stolen Weatherby rifle on or about January 31, 2007, in violation of RCW 9A.56.310.[2] Count III alleged that McPhee knowingly possessed a stolen Benelli shotgun between January 28 and February 2, 2007, in violation of RCW 9A.56.310. Count IV alleged that McPhee knowingly possessed a stolen Remington shotgun on or about February 9, 2007, in violation of RCW 9A.56-.310. Count V alleged that he knowingly possessed a stolen Enfield rifle on or about February 9, 2007, in violation of RCW 9A.56.310. And count VI alleged that McPhee knowingly possessed stolen property other than a firearm, to-wit: field binoculars and ivory tusks in violation of former RCW 9A.56.160(1)(a) (1995).[3]

FIRST JURY TRIAL

¶3 On November 27, 2007, McPhee's jury trial on the original charges commenced. During that trial, Ronald Miller testified that he returned from an overnight trip on January 29, 2007, to discover his home had been burgled. That day, Miller reported that four guns and one set of field binoculars had been stolen. The guns included one hunting rifle with a scope, one Benelli shotgun, one Remington shotgun, and an Enfield military rifle. Miller later discovered that a pair of tusks was also missing from his home.

¶4 Nicholas Herrick testified that in January or February, McPhee contacted him to ask if he was interested in buying a gun. Around January 31, 2007, McPhee brought four guns to Herrick's job site on Willows Road in Ilwaco. At

---

[1] RCW 9A.52.025(1) states in pertinent part, "A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle."

[2] RCW 9A.56.310(1) states in pertinent part, "A person is guilty of possessing a stolen firearm if he or she possesses, carries, delivers, sells, or is in control of a stolen firearm."

[3] Former RCW 9A.56.160(1)(a) (1995) states that a person is guilty of second degree possessing stolen property when "[h]e or she possesses stolen property other than a firearm as defined in RCW 9.41.010 which exceeds two hundred fifty dollars in value but does not exceed one thousand five hundred dollars in value."

the time, McPhee had the guns in his car. Herrick was suspicious of the guns, asked McPhee if they were legitimate, and informed McPhee that he planned to call the sheriff to confirm that they were not stolen. According to Herrick, McPhee denied that the weapons were stolen. During the encounter, Herrick took possession of the Weatherby rifle. He subsequently turned it over to Pacific County Sheriff's Deputy Larry Clark.

¶5 Jeremy Baker testified that Herrick informed him that McPhee had some guns for sale. Baker met with McPhee on the same day that McPhee met with Herrick. Baker believed that date was on or about February 2, 2007. They met at 2815 Willows Road in Seaview. Baker was interested in purchasing the Benelli shotgun from McPhee for a couple hundred dollars. Baker took the Benelli shotgun into his possession that day.

¶6 Steve Neva testified that McPhee contacted him about a week before February 9, 2007, to ask if he was interested in purchasing some guns. Neva and McPhee had previously worked together at a jobsite next to Miller's residence. While working on that site, McPhee had gone to Miller's residence to use the electrical power. According to Neva, approximately one week before McPhee contacted him about purchasing the guns, McPhee asked to borrow Neva's truck to "unload a house." 1 Report of Proceedings (RP) (Nov. 27, 2007) at 132. Neva came to believe that the guns McPhee was attempting to sell had come from Miller's house.

¶7 Meanwhile, Miller placed an advertisement in the local newspaper, the *Chinook Observer*, in which he listed the missing items[4] and offered a $500 reward for their return. The advertisement was published on February 7, 2007. A few days later, David Kochis contacted Miller about the missing items. After speaking with Kochis, Miller contacted his old friends, Steve Neva and Dale McGinnis, to help him recover the guns, the binoculars, and the tusks. Miller

---

[4] The advertisement did not identify the tusks as missing.

also contacted Pacific County Sheriff's Deputy Daree Smith to inform him he had devised a plan to recover his property.

¶8 Neva testified that he, McGinnis, Kochis, and another man went to confront McPhee at McPhee's girl friend's residence on the morning of February 9, 2007. McPhee led the group to the place where he had stored the guns and other property. According to Neva, the guns were under some brush without covering for protection. The tusks and the binoculars were in the same location.

¶9 Deputy Clark testified that he apprehended McPhee as the men were leaving the property. Clark had been waiting in the area after law enforcement personnel had alerted him that there was a suspicious vehicle in that area en route to retrieve some stolen guns.

¶10 Deputy Smith testified that when he arrived, Mc-Phee was sitting in the back of Deputy Clark's patrol car. McPhee told Smith that *he knew he was in a lot of trouble and he wanted to cooperate.* He explained that he had obtained the guns in Ilwaco from a guy named Bill. McPhee related a conversation that he had had with Bill during which McPhee told Bill about a house on the bay with a big screen television and some guns. Bill later approached McPhee to ask if he was interested in purchasing some guns, binoculars, and tusks. McPhee said that Bill wanted $100 for everything. At that point, Smith asked McPhee if he thought it was odd that Bill wanted to sell four guns, binoculars, and tusks for a mere $100. McPhee responded that he did think it was odd but that he believed Bill was attempting to get some quick cash. McPhee was not interested in the guns; however, he did want the tusks because he thought they were interesting and that he could sell them for a profit. McPhee claimed to have purchased all the items for $100.

¶11 McPhee testified on his own behalf. He confirmed that he transported the guns to Herrick and Baker in his car. He further testified that he was unaware that the weapons were stolen until February 9, 2007, when the four men confronted him at his girl friend's home. McPhee

explained that he had placed the items in the brush on his friend's property for safekeeping. He had no other place to store them; he was aware that the guns would be exposed to the elements while they were stored outside in the brush, but he believed any damage could be repaired. He wrapped the items in plastic in an attempt to minimize the damage. McPhee admitted that the items had been lying in the brush for approximately two or three days before his arrest.

¶12 The jury acquitted McPhee of residential burglary and two counts of possession of stolen firearms for the Weatherby rifle and the Benelli shotgun. The jury left the remaining verdict forms as to the remaining counts blank because it was deadlocked. The trial court declared a mistrial as to the remaining counts: possession of a stolen firearm, to-wit: Remington shotgun (count IV); possession of a stolen firearm, to-wit: Enfield shotgun (count V); and second degree possession of stolen property, to-wit: field binoculars and tusks (count VI).

Second Jury Trial

¶13 Following the mistrial, the State amended the information a second time, such that counts I, II, and III corresponded to counts IV, V, and VI from the first jury trial. A second jury trial commenced on March 17, 2008.

¶14 Defense counsel moved in limine to exclude evidence of the Miller residence burglary, evidence of the items stolen from the Miller residence, and testimony relating to any conversation or statement made about the burglary or relating to knowledge of the Miller home, its location, and that McPhee had once worked on a house next to the Miller residence. Defense counsel argued that the evidence was "irrelevant, misleading, inflammatory, and prejudicial given the rejection of the State's charge of residential burglary in the first trial." 1 Clerk's Papers (CP) at 19. Defense counsel specifically sought to exclude any evidence of McPhee's conversation with Deputy Smith regarding Bill.

¶15 The State argued against exclusion of the evidence. It maintained that the evidence concerning the conversa-

tion with Bill provided circumstantial evidence of the essential element of knowledge. In its briefing and argument, the State emphasized its burden to prove the weapons and property were stolen to support the charges. The State further suggested that any prejudicial effect would be cured with a limiting instruction.

¶16 The trial court denied McPhee's motion in limine. It determined that any prejudicial effect could be cured through a limiting instruction. The trial court, the State, and defense counsel then crafted an instruction. Their efforts resulted in the following instruction:

> Testimony has been introduced that the home of Ronald Miller was burglarized and that four firearms were taken, in addition to a pair of field binoculars and some tusks. This evidence had been introduced for the limited purpose of determining whether or not these items were in fact stolen from Ronald Miller's residence. You should not consider this testimony for any other purpose.

> Further, any testimony you hear regarding any statements made by the defendant or any other witness, regarding any firearms or Ronald Miller's home, has been introduced solely for the limited purpose of determining whether the defendant had knowledge that the two firearms named in Counts I and II were stolen.

> You are further advised that during a previous trial, the jury found the defendant not guilty of committing the burglary at Ronald Miller's residence. Further, the jury also found the defendant not guilty in the same trial of possessing two other firearms to wit: the Weatherby rifle and the Benelli shotgun. The fact that the jury found the defendant not guilty of the three offenses mentioned above must not be considered by you in reaching a verdict in this case.

Further, in the course of your deliberations, you must not re-consider these three not guilty verdicts reached by the prior jury.

2 CP at 140.[5]

¶17 Herrick, Baker, and Neva did not testify during the second trial; but McGinnis, Miller, Deputy Clark, and Deputy Smith did. McPhee again testified on his own behalf. In addition, a State witness read a portion of the transcript into the record from McPhee's testimony at his first trial.

¶18 At the end of the State's case-in-chief, McPhee moved to dismiss all charges, arguing that the State failed to establish the corpus delicti of the crimes. The trial court denied the motion. McPhee then moved to dismiss count III, possession of stolen property other than weapons, to-wit: the binoculars and the tusks. The trial court granted that motion, finding that the State failed to establish the value of the binoculars and tusks at the proximate time and area of the act. The State immediately moved to amend to the lesser charge of third degree possession of stolen property other than weapons. The trial court denied the State's motion.

¶19 The jury found McPhee guilty of possession of stolen firearms as alleged in counts I and II. At sentencing, the trial court determined that the offenses constituted the same criminal conduct under RCW 9.94A.589. It sentenced McPhee to six months in jail, with one month converted to community service work.

¶20 McPhee appeals. The State cross appeals the trial court's dismissal of count III.

## ANALYSIS

DOUBLE JEOPARDY

¶21 McPhee contends that the State violated his right not to be put in jeopardy twice when it tried him for

---

[5] The record indicates that the trial court also read the instruction to the jury after opening arguments, although the recitation is not included in the record.

possession of the Remington shotgun and the Enfield rifle during his second trial. The application of double jeopardy principles is a question of law we review de novo. *State v. Eggleston*, 164 Wn.2d 61, 70, 187 P.3d 233, *cert. denied*, 129 S. Ct. 735 (2008).

¶22 The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Washington State Constitution provides that "[n]o person shall be . . . twice put in jeopardy for the same offense." CONST. art. I, § 9. Washington's clause provides the same protection as the federal clause. *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 171, 12 P.3d 603 (2000).

¶23 For a defendant's double jeopardy right to be violated, three elements must be present: (1) jeopardy must have previously attached, (2) jeopardy must have previously terminated, and (3) the defendant is again being put in jeopardy for the same offense. *State v. Corrado*, 81 Wn. App. 640, 645, 915 P.2d 1121 (1996). McPhee contends that jeopardy as to all the charges terminated with the acquittal in his first trial.

¶24 Generally, jeopardy terminates with a verdict of acquittal. *Corrado*, 81 Wn. App. at 646. But jeopardy does not, generally, terminate when a mistrial is due to a hung jury. *Corrado*, 81 Wn. App. at 648 (citing *Richardson v. United States*, 468 U.S. 317, 324, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984); *Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978); *United States v. Perez*, 22 U.S. (9 Wheat) 579, 580, 6 L. Ed. 165 (1824)).

¶25 Here, in the first trial, the jury was unable to reach a verdict for the charges of (1) knowing possession of the stolen Remington shotgun, (2) knowing possession of the stolen Enfield rifle, and (3) knowing possession of the stolen field binoculars and the tusks. The trial court declared a mistrial and jeopardy did not terminate as to those charges. *See Corrado*, 81 Wn. App. at 648. The first jury acquitted McPhee of crimes involving different items, dif-

ferent places, different days, and different circumstances than the second trial's charges for knowing possession of a stolen Remington shotgun and knowing possession of a stolen Enfield rifle. McPhee's second jury trial on the knowing possession of stolen firearms charges did not violate constitutional provisions barring double jeopardy. *See Corrado*, 81 Wn. App. at 648.

COLLATERAL ESTOPPEL

¶26 McPhee also argues that the State violated principles of collateral estoppel by forcing him to relitigate issues already decided during his first trial. We disagree.

¶27 The doctrine of collateral estoppel is embodied in the constitutional guarantee against double jeopardy. *Ashe v. Swenson*, 397 U.S. 436, 442-43, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). Accordingly, we review issues of collateral estoppel de novo. *Eggleston*, 164 Wn.2d at 70.

¶28 When an issue of ultimate fact has been determined by a "valid and final judgment," that issue cannot be litigated again between the same parties in any future controversy. *Ashe*, 397 U.S. at 443. Collateral estoppel, however, does not bar the later use of evidence merely because it relates to alleged criminal conduct for which a defendant has previously been acquitted. *Eggleston*, 164 Wn.2d at 71 (quoting *Dowling v. United States*, 493 U.S. 342, 348, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990)).

¶29 We apply collateral estoppel in the criminal context when the party asserting it affirmatively satisfies four questions. *Eggleston*, 164 Wn.2d at 72.

"(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea of collateral estoppel is asserted a party or in privity with the party to the prior adjudication? (4) Will the application of the doctrine work an injustice on the party against whom the doctrine is to be applied?"

*Eggleston*, 164 Wn.2d at 72 (quoting *State v. Tili*, 148 Wn.2d 350, 361, 60 P.3d 1192 (2003)). Here, we must discern

whether the first jury decided that McPhee had no knowledge on February 9, 2007, that the Remington shotgun and the Enfield rifle were stolen, thereby foreclosing relitigation of that issue in the second trial.

¶30 In determining whether to apply collateral estoppel in the context of a general verdict, as is the case here, our inquiry " 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " *Eggleston*, 164 Wn.2d at 73 (quoting *Sealfon v. United States*, 332 U.S. 575, 579, 68 S. Ct. 237, 92 L. Ed. 180 (1948)). If " 'a rational jury could have grounded its [general] verdict upon an issue other than that which the defendant seeks to foreclose from consideration,' collateral estoppel will not preclude its relitigation." *Eggleston*, 164 Wn.2d at 73 (alteration in original) (internal quotation marks omitted) (quoting *Ashe*, 397 U.S. at 444).

¶31 McPhee's reliance on *Ashe* is misguided. In *Ashe*, three or four masked and armed men robbed six men who were playing poker. 397 U.S. at 437. The State charged Ashe with the robbery of one of the victims. *Ashe*, 397 U.S. at 438. The trial judge instructed the jury that if it found that Ashe was one of the participants in the robbery, he was guilty even if he had not personally robbed the victim. *Ashe*, 397 U.S. at 439. The jury acquitted Ashe. *Ashe*, 397 U.S. at 439. The State then charged and convicted Ashe of robbing another one of the previously named victims. *Ashe*, 397 U.S. at 439.

¶32 The Supreme Court applied collateral estoppel, reversed Ashe's conviction, and held that his acquittal in the first trial foreclosed the second trial because the acquittal verdict could have only meant that the jury was unable to conclude beyond a reasonable doubt that Ashe was one of the bandits. *Ashe*, 397 U.S. at 445. To convict at the second trial, the jury necessarily had to reach a conclusion "directly contrary" to the first jury's decision. *Dowling*, 493 U.S. at 348 (citing *Ashe*, 397 U.S. at 445).

¶33 Here, the first jury could have grounded its acquittals on a number of factors other than McPhee's

knowledge that the firearms were stolen on February 9, 2007. For example, after the dates of the burglary, McPhee's possession of the stolen Weatherby rifle, and his possession of the stolen Benelli shotgun, Miller placed the advertisement in the *Chinook Observer*, offering a reward for the stolen weapons and property. And on February 9, the weapons were hidden in some brush in an open field rather than in McPhee's car where he had previously transported them between January 28 and February 2. A reasonable jury could infer, based on this evidence, that McPhee learned the items were stolen sometime *after* February 2. For this reason, McPhee's collateral estoppel argument fails. *Eggleston*, 164 Wn.2d at 73-74.

¶34 Similarly misguided is McPhee's argument that collateral estoppel precluded the State from presenting *any* evidence that the Miller residence burglary occurred. *See Dowling*, 493 U.S. at 348; *Eggleston*, 164 Wn.2d at 71 (collateral estoppel bars relitigation of issues, not admission of evidence that relates to the alleged criminal conduct for which a defendant was acquitted). The State introduced the burglary evidence to show that the weapons were stolen and that, on February 9, 2007, McPhee knew they were stolen. The trial court instructed the jury that it was to consider evidence about the burglary solely to determine whether McPhee knew on February 9, 2007, that the Remington shotgun and the Enfield rifle were stolen. We presume jurors follow the trial court's instructions. *See State v. Kirkman*, 159 Wn.2d 918, 937, 155 P.3d 125 (2007).

¶35 We conclude that McPhee has not established that the jury in his first trial determined that he had no knowledge on February 9, 2007, that the Remington shotgun and the Enfield rifle were stolen when he had wrapped them in plastic and hid them under the brush. Accordingly, collateral estoppel did not bar litigation of that issue in his second trial. *See Eggleston*, 164 Wn.2d at 73-74.

CORPUS DELICTI

¶36 McPhee next argues that the trial court erred when it denied his motion to dismiss the two convictions for

possession of stolen firearms under corpus delicti principles. Again, we disagree.

¶37 We review de novo the trial court's decision finding sufficient evidence of the corpus delicti. *State v. Pineda*, 99 Wn. App. 65, 77-78, 992 P.2d 525 (2000). "Washington's version of the corpus delicti rule requires that the State produce evidence, *independent of the accused's statements*, sufficient to support a finding that the charged crime was committed by someone." *State v. Bernal*, 109 Wn. App. 150, 152, 33 P.3d 1106 (2001), *review denied*, 146 Wn.2d 1010 (2002); *accord State v. Page*, 147 Wn. App. 849, 856-57, 199 P.3d 437 (2008) (determining whether independent evidence corroborated the defendant's *out-of-court* statements sufficient to establish the corpus delicti of the crime), *review denied*, 166 Wn.2d 1008 (2009).

¶38 "A confession or admission, standing alone, is insufficient to establish the corpus delicti of a crime." *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995); *see also Page*, 147 Wn. App. at 856-57. In determining whether there is sufficient independent evidence under the corpus delicti rule, we view the evidence in the light most favorable to the State. *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006). The evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration of the crime or support a logical and reasonable inference that someone committed the crime. *See Brockob*, 159 Wn.2d at 328. In addition,

> when the defendant elects to introduce substantive evidence on h[is] own behalf following the denial of a corpus delicti motion, the defendant waives h[is] challenge to the sufficiency of the evidence as it stood at that point. The appellate court may then review the evidence as a whole to determine whether there is sufficient independent evidence supporting a logical and reasonable inference that the crime charged occurred.

*State v. Liles-Heide*, 94 Wn. App. 569, 572, 970 P.2d 349 (1999) (footnote omitted). Stated another way, "once the defendant elects to present evidence and that evidence

establishes the corpus delicti, he . . . cannot prevail on appeal." *State v. Pietrzak*, 110 Wn. App. 670, 680, 41 P.3d 1240 (citing *Liles-Heide*, 94 Wn. App. at 572-73), *review denied*, 147 Wn.2d 1013 (2002). To establish corpus delicti for possession of stolen property charges, there must be evidence that the property in question was stolen. *See Brockob*, 159 Wn.2d at 331-32.

¶39 Here, evidence independent of McPhee's statements established the corpus delicti of the possession of stolen firearm charges. *See Pietrzak*, 110 Wn. App. at 679; *Liles-Heide*, 94 Wn. App. at 572. In addition to McGinnis's testimony that McPhee led him, Neva, and some "other guys" to the property where he had stored the items (1 RP (Mar. 17, 2008) at 41), McPhee testified that he had possession of the Remington shotgun and the Enfield rifle. He did not deny possession; he denied knowing they were stolen. The State presented evidence that belied McPhee's claimed denial of guilty knowledge. It established that the guns were hidden in the brush for two to three days, likely at some point after Miller placed his February 7 advertisement in the *Chinook Observer*. Moreover, McPhee's claim that he hid the guns in the bushes because his girl friend would not allow guns in her home does not explain why the binoculars and the tusks were also hidden outside. The jury could have reasonably inferred that McPhee knew the firearms were stolen when he possessed them on February 9.

¶40 The evidence clearly establishes the corpus delicti for the crime of possession of stolen firearms. *See* RCW 9.41.040; *Brockob*, 159 Wn.2d at 331-32. We find no error in the admission of McPhee's out-of-court statements during the second trial.[6] *Brockob*, 159 Wn.2d at 331-32; *see also*

---

[6] McPhee further alleges that the challenged evidence violated principles of fundamental fairness, but he provides no legal argument or citation specific to this claim. *See State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (" 'naked castings into the constitutional sea' " are insufficient to merit judicial consideration (internal quotation marks omitted) (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986))).

*Liles-Heide*, 94 Wn. App. at 572-73; *Pietrzak*, 110 Wn. App. at 679.

SUFFICIENT EVIDENCE

¶41 In a similar argument, McPhee contends that there is insufficient evidence to support his two convictions for second degree possession of firearms because the evidence did not establish that he had knowledge the Remington shotgun and the Enfield rifle were stolen. We disagree.

¶42 We review a challenge to the sufficiency of the evidence by viewing the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Bencivenga*, 137 Wn.2d 703, 706, 974 P.2d 832 (1999). A defendant's claim of insufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We must draw all reasonable inferences in favor of the State and most strongly against the defendant. *Salinas*, 119 Wn.2d at 201. Both circumstantial evidence and direct evidence are equally reliable. *Bencivenga*, 137 Wn.2d at 711; *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶43 McPhee was convicted of two counts of possession of stolen firearms for the Remington shotgun and the Enfield rifle. RCW 9A.56.310. The State had the burden to prove that McPhee knew the firearms were stolen on February 9, 2007, when he possessed them. *See State v. Khlee*, 106 Wn. App. 21, 24, 22 P.3d 1264 (2001). Bare possession of stolen property is insufficient to justify a conviction. *See State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967). "However, possession of recently stolen property in connection with other evidence tending to show guilt is sufficient." *Couet*, 71 Wn.2d at 775. Viewing the evidence in the light most favorable to the jury's verdict, sufficient evidence supports McPhee's convictions.

¶44 Miller testified that he published his advertisement in the *Chinook Observer* on February 7, 2007. The State presented evidence that McPhee had moved the items to the brush a couple of days before February 9. A jury could reasonably infer that McPhee moved the items to the brush because he saw the advertisement in the *Chinook Observer*. Additionally, the evidence that McPhee worked next door to Miller's residence, from where the items were stolen, could suggest that McPhee knew those items were stolen. McPhee may have observed the items inside Miller's residence when he was searching Miller's property for a power source. This evidence reasonably shows that McPhee knew the items were stolen when he allegedly purchased them from Bill. Moreover, McPhee's testimony that he purchased four guns, the field binoculars, and the tusks for a mere $100 could lead a reasonable jury to reasonably infer that McPhee suspected the items were stolen. Finally, McPhee's testimony that he hid the tusks, which he deemed valuable, in the brush along with the firearms and binoculars could have led a jury to reasonably infer that McPhee knew on February 9 that the items were stolen, particularly given his explanation that he hid them in the brush because his girl friend would not allow firearms in her home.

¶45 Furthermore, the State presented direct evidence that McPhee knew on February 9 that the firearms were stolen. When Deputy Smith asked McPhee why he had hidden the firearms in the brush, McPhee's response was that he had been scared, he could not keep them in his car, his girl friend would not allow firearms in her home, and he knew they were stolen. McPhee told Smith that he "knew they were stolen and it was just kind of a stupid thing to do." 2 RP (Mar. 18, 2008) at 32. Although McPhee testified that he hid the firearms in the brush for other reasons, the jury did not find his testimony credible. We will not disturb credibility determinations on appeal. *Camarillo*, 115 Wn.2d at 71. Considering all reasonable inferences in favor of the verdict, the evidence was sufficient to support McPhee's two convictions for knowingly possessing

stolen firearms. *See Bencivenga*, 137 Wn.2d at 706; *Salinas*, 119 Wn.2d at 201; *Delmarter*, 94 Wn.2d at 638; *State v. Prestegard*, 108 Wn. App. 14, 23, 28 P.3d 817 (2001).

INEFFECTIVE ASSISTANCE OF COUNSEL

¶46 Finally, McPhee contends that his defense counsel was ineffective for failing to object to the relevancy of testimony about the burglary of Miller's residence under ER 404(b).[7] We disagree.

¶47 A claim of ineffective assistance of counsel requires a showing of deficient performance by counsel resulting in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). McPhee must satisfy both parts of the test and overcome a strong presumption of counsel's effective assistance. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Counsel's performance is deficient when it falls below an objective standard of reasonableness. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). A decision made by trial counsel for legitimate strategic or tactical reasons cannot support an ineffective assistance of counsel claim. *McNeal*, 145 Wn.2d at 362.

¶48 McPhee's defense counsel challenged admission of evidence of the Miller residence burglary on grounds of irrelevancy.[8] Moreover, the record shows that the trial court considered admission of the challenged evidence in light of ER 404(b). The trial court denied defense counsel's motion to exclude the evidence over defense counsel's argument and objections. And the trial court spent a significant amount of time crafting a curative instruction that it later

---

[7] ER 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.

[8] "The use of this evidence by the State is not only irrelevant under ER 104(b) but highly prejudicial to the Defendant." 1 CP at 19.

supplied to the jury. McPhee cannot establish that his defense counsel was ineffective for failing to object to evidence of the Miller residence burglary. *Strickland*, 466 U.S. at 687; *Reichenbach*, 153 Wn.2d at 130.

DISMISSAL OF POSSESSION OF STOLEN PROPERTY CHARGE

¶49 On cross appeal, the State asserts that the trial court abused its discretion when it dismissed count III, second degree possession of stolen property other than a firearm, on the ground that the State failed to prove the market value of the field binoculars and the tusks. We agree.

¶50 The State had the burden to prove that the binoculars and the tusks were valued between $250 and $1,500 at the approximate time of the offense. *See* former RCW 9A.56.160(1)(a); RCW 9A.56.010(18)(a) (defining "value" as "the market value of the property or services at the time and in the approximate area of the criminal act"). It is long standing and well established that a property owner may testify as to the property's market value without being qualified as an expert in this regard. *State v. Hammond*, 6 Wn. App. 459, 461, 493 P.2d 1249 (1972) (citing *McCurdy v. Union Pac. R.R.*, 68 Wn.2d 457, 413 P.2d 617 (1966)). "The weight of such testimony is another question and may be affected by disclosures made upon cross-examination as to the basis for such knowledge, but this will not disqualify the owner as a witness." *Hammond*, 6 Wn. App. at 461.

¶51 The trial court dismissed count III because the State did not "establish[ ] the market value through more direct process." 2 RP (Mar. 18, 2008) at 88. But Miller, the rightful owner of the binoculars and tusks, testified that he traded two salmon charter license permits, each worth $750, with a friend who ran a local sporting goods store for the binoculars. In addition, the State offered and the trial court admitted the binoculars and the tusks as evidence. Miller's testimony and the physical evidence were more than sufficient to meet the prima facie standard to send the

case to the jury. *See Hammond*, 6 Wn. App. at 461. The trial court erred as a matter of law when it dismissed count III at the end of the State's case. The State is entitled to retry McPhee on the charge of second degree possession of stolen property other than a firearm.[9] *See State v. Collins*, 112 Wn.2d 303, 304, 771 P.2d 350 (1989); 12 ROYCE A. FERGUSON JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 2110 (3d ed. 2004) ("[I]f the court did not weigh the evidence in entering the order appealed from, reversal and retrial is not barred on double jeopardy grounds.").

STATEMENT OF ADDITIONAL GROUNDS

¶52 In a statement of additional grounds,[10] McPhee contends that Deputy Smith's police report did not accurately convey his statement. But Smith's report is not included in the record. We will not consider matters outside the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Accordingly, we cannot consider this issue.

¶53 We affirm McPhee's two convictions of possession of stolen firearms. In addition, we reverse the order dismissing the possession of stolen property count and remand for a new trial on the charge of second degree possession of stolen property other than a firearm.

BRIDGEWATER and HUNT, JJ., concur.

Review denied at 169 Wn.2d 1028 (2010).

---

[9] We note that in his response to the State's cross appeal, McPhee agreed that the trial court erred by not allowing the State to amend the charge to third degree possession of stolen property. Reply Br. of Appellant at 6 ("The defense concedes that under the facts of this case, the State may amend to a lesser degree of the same charge.").

[10] RAP 10.10.