# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58285-6-II |
| Respondent, | |
| v. | |
| L.G.-B., | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Two of LG-B's friends robbed a woman at gunpoint with a gun that had been stolen three years earlier. After the robbery, the friends met LG-B and he drove their car. Officers tried to pull the car over, but LG-B led the officers on a long high-speed chase before they disabled the car. During the chase, the friends threw the gun and property stolen in the robbery out the passenger side window.

All three defendants were 16 or 17 years old. The State charged LG-B with first degree robbery, first degree theft, possession of a stolen firearm, and attempting to elude police. LG-B's friends each pleaded guilty to robbery charges.

At a bench trial, LG-B's friends each testified that they committed the robbery together and did not pick LG-B up until afterwards. The friends testified that LG-B did not know about the robbery or the gun involved. The gun's owner testified that it was stolen three years before the robbery, but he did not know who stole it. The friends both invoked their Fifth Amendment right to remain silent when asked where they acquired the gun. And LG-B denied knowing that the gun

was in the car or that it was stolen. He conceded that he committed attempt to elude police. The trial court acquitted LG-B of the first degree robbery and first degree theft charges, but adjudicated him guilty of possessing a stolen firearm and attempting to elude police.

LG-B appeals his adjudication of guilt for possession of a stolen firearm, arguing there was insufficient evidence that he actually possessed the gun or that he knew the gun was stolen.

We conclude there was sufficient evidence for the trial court to infer that LG-B possessed the gun because it was in the car he drove, but there was no evidence that LG-B knew the gun was stolen, a necessary element of possession of a stolen firearm. We remand for the trial court to vacate and dismiss with prejudice LG-B's adjudication of guilt for possession of a stolen firearm.

FACTS

I. BACKGROUND

Early one morning in September 2022, Brianna Portillo was standing outside her apartment waiting for a coworker to pick her up for work when a white Pontiac pulled up nearby and two people got out. The passenger, later identified as KC, was wearing a red sweatshirt. The driver, who wore all black, pointed a gun at Portillo. The robbers directed her to give them various items, including her backpack and headphones, which she did. Then they got back into the car and left.

Portillo went back inside to wake her girlfriend, and the pair began driving around the neighborhood looking for the robbers. As they passed a gas station, Portillo saw the Pontiac being fueled at the gas station and recognized KC as one of the robbers. Portillo's girlfriend called 911.

Police attempted to pull over the Pontiac as it left the gas station. The car initially pulled over and stopped, then it took off before officers could approach. As police followed, the car led police on an extended high-speed chase exceeding 100 miles per hour, and police eventually

pinned the car against a guardrail. LG-B was driving, XV was in the front passenger seat, and KC was in the back seat. All three were arrested.

The State charged LG-B with first degree robbery with a deadly weapon, first degree theft, possession of a stolen firearm, and attempting to elude a pursuing police vehicle. He was 16 years old at the time. XV, who was also 16, pleaded guilty to second degree robbery while armed with a firearm. And KC, who was 17, pleaded guilty to first degree robbery.

## II. TRIAL

A. <u>Evidence at Trial</u>

At a bench trial, the owner of the gun used in the robbery testified that the gun was stolen in December 2019, almost three years before the robbery. He did not know any of the people arrested in this case.

LG-B was about six feet tall and 160 pounds when police arrested him. XV, who wielded the gun during the robbery and who was in the passenger seat when the juveniles were arrested, was about five feet, eight inches tall and weighed 220 pounds. Both were Latino and wearing mostly black clothing when arrested, although LG-B's shirt had a large white rabbit on the front and his jeans had significant holes. At trial, Portillo identified LG-B as the person holding the gun during the robbery. But she was impeached with her statement to police, provided about 30 minutes after the robbery, describing the person with the gun as a "little thick and chunky and about five foot eight." Verbatim Rep. of Proc. (VRP) at 99-100. And even at trial she recalled the person with the gun was wearing all black, she did not mention a white logo on his shirt, and she did not recall there being obvious holes in his pants.

XV and KC each testified that they were driving around together and decided to rob someone. XV was driving. KC was on a type of benzodiazepine and XV had been drinking heavily. Both testified that XV carried the gun during the robbery. When asked where the gun came from, both invoked the Fifth Amendment.

XV and KC each testified that after the robbery, they picked up LG-B and made their way to the gas station. All three testified that because XV had been drinking, LG-B drove. Both XV and KC denied saying anything about the robbery to LG-B or showing him the gun. XV specifically testified that the gun was hidden when LG-B got in the car. And LG-B denied seeing any gun in the car or knowing anything about the gun, including that it was stolen.

At the gas station, LG-B fueled the car with money that XV gave him. The State presented surveillance footage of this activity.

XV and KC also testified that when police tried to pull the car over, they yelled at LG-B to drive away. LG-B testified that he initially pulled over, then he saw that the officers were approaching the car with guns while his friends were yelling at him to drive. Because his friends were yelling, and "considering [his] skin color," he drove away. VRP at 398. XV and KC testified they were the ones who threw the stolen items from the car. Officers testified that the gun was thrown from the passenger side of the car.

In his testimony and closing argument, LG-B conceded that he committed attempt to elude police. But he denied any involvement in the robbery and any knowledge that the gun was in the car or that it was stolen.

4

B.    Verdict and Sentencing

The trial court entered written findings of fact and conclusions of law. Based on the conflicting evidence about whether XV or LG-B participated in the robbery, the trial court found LG-B not guilty of first degree robbery and first degree theft. The trial court found LG-B guilty of attempting to elude a pursuing police vehicle.

The trial court also found that LG-B possessed a stolen firearm. Specifically, the trial court found, "On September 4, 2022, Respondent and/or an accomplice did knowingly possess, carry, or have in his control a firearm *he knew was stolen* to wit: a Smith & Wesson SD 40." Clerk's Papers (CP) at 23 (Finding of Fact (FF) 1) (emphasis added). Other findings recited the relevant evidence. First, the trial court found that LG-B "drove a motor vehicle with two other individuals who had moments before used the firearm in a strong-arm robbery" and that under the circumstances, "it is reasonable that Respondent knew of the existence of the firearm in the vehicle or on the persons of [XV] and/or [KC]." CP at 23 (FF 2, 3). "Within minutes of the strong-arm robbery, video taken at [the gas station] shows Respondent excessively touching and moving his hands at the waistband of his pants in an unusual manner. He also was seen bending over, reaching into the front of his pants." *Id.* (FF 4). The trial court continued: "These actions combined with the timing of the strong-arm robbery are highly suggestive of possession of a firearm[,] noting the video does not clearly show any outline or portion of the firearm." *Id.* The trial court also found, "The firearm was thrown from the vehicle that Respondent was driving at a high rate of speed while attempting to elude the pursuing police vehicle[.] These acts are evidence of a guilty consc[ience]." *Id.* (FF 5).

The trial court entered a conclusion of law based on these findings: "The firearm thrown from the vehicle Respondent was driving was stolen and Respondent and/or an accomplice did knowingly possess the stolen firearm and [] the firearm was operable and in working order." CP at 25 (Conclusion of Law 3). Accordingly, the trial court found LG-B guilty of possession of a stolen firearm.

In its oral ruling, the trial court expressly stated that it did not believe KC's and XV's assertions that they told LG-B nothing about the robbery, calling the testimony "fantastical." VRP at 455. The trial court also observed that having pleaded guilty to the robbery already, XV and KC had nothing to lose by trying to protect LG-B from further consequences.

Also in its oral ruling, the trial court highlighted LG-B's decision to flee from police, opining that this was evidence of a guilty conscience because "[h]e knows there's a gun in the car, and they've got stolen property in the car, and so he guns it and hopes that they can shake the police." VRP at 454. Additionally, the trial court reasoned that "when you're going a hundred miles an hour, [and] the windows go down, you kind of know that the windows are going down." VRP at 455. "It's loud, there's movement, and eyes are drawn, and eyes are really good about picking up things in peripheral vision. So, if a gun was tossed out by somebody, there's likelihood that he knew that." *Id.* Although these findings relate to whether LG-B knew his friends had a gun and stolen property in the car, the trial court did not mention any specific evidence, inference, or belief that LG-B knew the gun was stolen.

The trial court imposed a total of 33 days of confinement with credit for time served. It also imposed 12 months of probation on the attempt to elude police adjudication.

LG-B appeals his adjudication of guilt for possession of a stolen firearm.

6

ANALYSIS

LG-B argues that there was insufficient evidence to adjudicate him guilty of possession of a stolen firearm as either a principal or an accomplice. He assigns error to findings of fact 1 and 4 and conclusion of law 3 on this basis. LG-B asserts that there was no evidence that he possessed, carried, or controlled the firearm, "[n]or did the State present any evidence he knew the gun had been stolen years earlier." Br. of Appellant at 18. For the accomplice liability theory, LG-B again emphasizes that there was no evidence he knew the firearm was stolen, so [h]is knowing assistance in any other criminal activity does not suffice" to adjudicate him guilty of possession of a stolen firearm. *Id.* at 20-21.

The State first responds that the fact that LG-B was driving the Pontiac was sufficient to establish at least constructive possession of the firearm, which was inside the vehicle. And it points to the extensive car chase with police as evidence of consciousness of guilt. The State relies on the trial court's finding that XV and KC were lying to cover for LG-B, and the fact that it is illegal in Washington to purchase a gun when under the age of 21, to propose that LG-B must have known the gun was stolen. And it contends that XV's or KC's act of throwing the firearm out of the car can be imputed to LG-B as "distanc[ing] themselves from the stolen weapon." Resp't's Br. at 27. We disagree and hold that there was insufficient evidence that LG-B knew the gun was stolen.

A.     Legal Principles

There is sufficient evidence to support a conviction if, taking the State's evidence as true and viewing the evidence in a light most favorable to the State, any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt. *State v. Dreewes*, 192 Wn.2d 812, 821, 432 P.3d 795 (2019). "Specifically, following a bench trial, appellate review is limited to

determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). Substantial evidence "is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id*. at 106. We treat unchallenged findings of fact as verities on appeal, and review challenges to a trial court's conclusions of law de novo. *Id*. Further, circumstantial evidence is as reliable as direct evidence. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). And we defer to the fact finder's resolution of conflicting testimony and evaluation of the evidence's persuasiveness. *Homan*, 181 Wn.2d at 106.

A person is guilty of possession of a stolen firearm if they possess, carry, deliver, sell, or are in control of a stolen firearm. RCW 9A.56.310(1). "The definition of 'possessing stolen property' . . . under RCW 9A.56.140 shall apply to the crime of possessing a stolen firearm." RCW 9A.56.310(4). A person possesses stolen property if they knowingly "receive, retain, possess, conceal, or dispose of stolen property *knowing that it has been stolen*" and "withhold or appropriate the same to the use of any person other than the true owner," regardless of whether they are the person who stole the property in the first place. RCW 9A.56.140(1) (emphasis added). And a person acts knowingly when they are "aware of a fact, facts, or circumstances or result described by a statute defining an offense" or have "information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b)(i)-(ii).

The State can prove that a defendant knew the firearm was stolen by proving "knowledge of facts sufficient to place the accused on notice that the property was stolen." *State v. Crow*, 8 Wn. App. 2d 480, 495, 438 P.3d 541 (2019). "Bare possession of stolen property is insufficient to

justify a conviction." *State v. McPhee*, 156 Wn. App. 44, 62, 230 P.3d 284 (2010). But "possession of recently stolen property in connection with other evidence tending to show guilt is sufficient." *State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967). "Other evidence of guilt may include a false or improbable explanation of possession, flight, use of a fictitious name, or the presence of the accused near the scene of the crime." *State v. Q.D.*, 102 Wn.2d 19, 28, 685 P.2d 557 (1984).

For accomplice liability, the State must prove the defendant had actual knowledge that the principal was *engaging in the charged crime*, although it may do so through circumstantial evidence. *State v. Allen*, 182 Wn.2d 364, 374, 341 P.3d 268 (2015); *Dreewes*, 192 Wn.2d at 823. The Supreme Court has been careful to distinguish "between finding actual knowledge through circumstantial evidence and finding knowledge because the defendant 'should have known'" or "'an ordinary person in the defendant's situation would have known' the fact in question." *Allen*, 182 Wn.2d at 374 (quoting *State v. Shipp*, 93 Wn.2d 510, 514, 610 P.2d 1322 (1980)); *see Dreewes*, 192 Wn.2d at 825-26 . The latter "interpretation subjects a defendant to accomplice liability under a theory of constructive knowledge and is unconstitutional." *Allen*, 182 Wn.2d at 374.

When it comes to proving possession, the driver of a vehicle may have constructive possession of items in the back of the car. "We have found sufficient evidence of dominion and control over a vehicle even where the vehicle did not belong to the driver, but the contraband was in plain sight and within reach." *State v. Listoe*, 15 Wn. App. 2d 308, 328, 475 P.3d 534 (2020).

For the element of knowledge, this court has held that there was sufficient evidence to convict a defendant of possession of a stolen firearm when the defendant hid the firearms in the woods near his house after the owner posted an advertisement in the local newspaper about the

9

stolen items. *McPhee*, 156 Wn. App. at 63. Additionally, when a police officer asked the defendant why he had hidden the firearms, the defendant admitted to knowing the firearms were stolen, although he testified at trial that he had other reasons for hiding them. *Id*. Thus, circumstantial evidence of knowledge that an item was stolen can be enough to sustain a conviction. *Allen*, 182 Wn.2d at 374.

B.      Sufficiency of the Evidence in This Case

Here, all of the evidence presented at trial indicated that LG-B's decision to flee police related to the robbery his friends had just committed. The trial court found not credible XV's and KC's testimony that LG-B did not know about the gun or the robbery. But there was no testimony or other evidence presented to show that LG-B knew how his friends obtained the gun. And both XV and KC invoked the Fifth Amendment when asked how they acquired the gun. Accordingly, there was no evidence that LG-B had any involvement with the theft of the gun, which occurred almost three years before the charged events. There was no evidence or implication that anyone ever told LG-B how XV and KC obtained the gun. There are many ways for adults and juveniles alike to acquire firearms without either purchasing them through legal channels or stealing them. And even if we infer, as the trial court did, that LG-B knew the gun was in the car because his friends had recently committed a robbery with it, this inference without additional evidence does not reasonably extend to knowing that the gun had been stolen years earlier.

Similarly, for accomplice liability to apply, the State had to show that LG-B had actual knowledge that XV was engaging in *the* crime of possession of a *stolen* firearm. *Allen*, 182 Wn.2d at 374. As stated above, knowing that XV had the gun does not necessarily extend to knowledge that the gun was stolen. Moreover, there was not even any evidence at trial that XV knew the gun

was stolen. Even the act of XV throwing the gun out of the car demonstrates more culpability of guilt related to the robbery that had just occurred than to the theft of the gun three years earlier. Again, there is no evidence that XV told LG-B the gun was stolen, and under the facts of this case, it is not reasonable to infer from the evidence in our record that LG-B had such knowledge.

In sum, there was insufficient evidence to persuade a fair-minded person that LG-B knew the gun was stolen, so there was not substantial evidence to support the trial court's findings to that effect. And because there was insufficient evidence of the element of knowledge that the gun was stolen, it was error for the trial court to conclude that LG-B committed possession of a stolen firearm. Accordingly, we reverse and remand for the trial court to vacate LG-B's adjudication of guilt for possession of a stolen firearm. Because there is insufficient evidence, the adjudication of guilt must be dismissed with prejudice.

## CONCLUSION

We remand for the trial court to vacate and dismiss with prejudice LG-B's adjudication of guilt for possession of a stolen firearm.

No. 58285-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J

We concur:

VELJACIC, A.C.J.

CHE, J.