**/FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **AUG 1 7 2017**

~~Fairhurst . CJ.~~

CHIEF JUSTICE

This opinion was filed for record

at **8:00 am** on **August 17, 2017**

~~Susan L. Carlson~~
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, | NO. 93385-5 |
| v. | EN BANC |
| ZAIDA YESENIA CARDENAS-FLORES, Petitioner. | Filed **AUG 1 7 2017** |

STEPHENS, J.—The doctrine of corpus delicti protects against convictions based on false confessions, requiring evidence of the "'body of the crime.'" *State v. Aten*, 130 Wn.2d 640, 655-57, 927 P.2d 210 (1996). The primary question in this case is whether, in light of *State v. Dow*, 168 Wn.2d 243, 227 P.3d 1278 (2010), a criminal defendant may bring a corpus delicti challenge for the first time on appeal. Zaida Yesenia Cardenas-Flores did not make a corpus delicti objection at trial, raising it for the first time on appeal. Viewing the objection as solely a challenge to the admissibility of her confession, the Court of Appeals held that Cardenas-Flores

waived her evidentiary claim. We disagree and hold that a criminal defendant may raise corpus delicti for the first time on appeal as a sufficiency of the evidence challenge. On the merits of Cardenas-Flores's claims, we hold that the State presented sufficient evidence to establish the corpus delicti and all elements of the crime charged, and we reject her challenge to the jury instructions. Accordingly, we affirm her conviction.

## FACTS AND PROCEDURAL HISTORY

On December 18, 2013, Cardenas-Flores and Carlos Austin brought their infant son, C.A., to the emergency room. They reported that earlier that night, Austin had accidentally rolled over onto C.A.'s leg while they were sleeping near each other on a bed. Both parents were concerned that C.A. had been injured as a result of the rollover. A doctor examined C.A. and ordered X-rays, noting some initial swelling and tenderness around his left leg. After reviewing the X-rays, the doctor reported that "everything looked normal." Report of Proceedings (RP) (Aug. 19, 2014) at 182-83.

A few days later, Cardenas-Flores took her son to his regular pediatrician for a wellness exam. The pediatrician manipulated C.A.'s leg and found no deformities, noting the child had full range of motion. The pediatrician and a supervising doctor

reviewed C.A.'s X-rays and agreed with the emergency room doctor that everything looked normal.

On December 23, Cardenas-Flores and Austin once more rushed C.A. to the emergency room with concerns about C.A.'s leg. The hospitalist reported that C.A.'s left thigh was very swollen and tender, and that the infant was "obviously in a lot of pain whenever [the leg] was . . . moved." RP (Aug. 18, 2014) at 65-66. Another X-ray was taken, this time showing a displaced femur fracture.[1] The doctor concluded that the fracture occurred recently because it showed no healing in the area and a child as young as C.A. would typically begin healing within 7 to 10 days, if not sooner. Such an injury, according to the physician, would have been "immediately obvious, immediately symptomatic [and] . . . caus[ing] immediate pain and swelling." *Id.* at 72. The only time C.A. would not feel "excruciating pain" is when his leg was stabilized. *Id.* at 69, 75.

When asked how C.A. was injured, both parents responded that the December 18 rollover caused the fracture and that the swelling had worsened, prompting them to bring C.A. back to the hospital. The physician concluded that the rollover incident could not have injured C.A. for three reasons: (1) displaced fractures do not typically

---

[1] A "displaced fracture" is one in which the bone is in two separate pieces, unlike a fracture where the bone remains together with a line through it. RP (Aug. 18, 2014) at 64.

occur in rollovers because the bed absorbs most of the energy; (2) the time frame did not support that cause because earlier X-rays clearly showed no fracture from the accident; and (3) multiple medical providers examined C.A. between the rollover and the final hospital visit and found no fracture. Fearing that C.A.'s injury was the result of nonaccidental trauma, the doctor contacted the police and Child Protective Services.

Law enforcement officers interviewed Cardenas-Flores, asking why she took C.A. back to the emergency room. She initially responded that C.A. was fine, though somewhat fussy after the rollover accident on December 18, and that she did not know what happened to him on December 23 that caused his leg to worsen. Upon further questioning, Cardenas-Flores altered her response and said she tried to take her son out of his car seat too fast, which could have caused the fracture. At one point in the interview, Cardenas-Flores said she believed in God and did not want to lie; she explained that she wanted to believe the car seat caused C.A.'s injury but that it was not the cause. She further confessed that she may have put "too much pressure" on C.A.'s leg when trying to get him out of the car seat faster and pushed C.A.'s "left leg out and down to straighten it . . . hard enough that it actually did straighten the leg." RP (Aug. 19, 2014) at 201-02. Cardenas-Flores further admitted that after pushing his leg, C.A. began crying differently from his normal cry, and

-4-

when she was told that her son's leg had been fractured, she said she knew it was because of her actions.

The State charged Cardenas-Flores with second degree child assault. At trial, she denied pushing her son's leg or pulling him from his car seat too quickly. She claimed that she lied to appease the police and that her confession was false. A jury convicted Cardenas-Flores, and the court sentenced her to 31 months in prison, the bottom of the standard sentencing range.

Cardenas-Flores appealed her conviction to Division Two of the Court of Appeals. Among other things, she argued that the State did not produce independent evidence corroborating her confession to establish corpus delicti. *State v. Cardenas-Flores*, 194 Wn. App. 496, 501, 374 P.3d 1217 (2016). The Court of Appeals affirmed Cardenas-Flores's conviction, concluding that she had waived any corpus delicti claim by failing to raise it at trial.[2] The appeals court stated that a corpus delicti challenge must be preserved because it "is a judicially created rule of

---

[2] Although the Court of Appeals refused to entertain Cardenas-Flores's corpus delicti challenge directly, it conducted a corpus delicti analysis when reviewing her ineffective assistance of counsel claim. *See Cardenas-Flores*, 194 Wn. App. at 501 (acknowledging Cardenas-Flores's claim that defense counsel was ineffective for failing to object to the admission of her statements on corpus delicti grounds), 517-18 (finding Cardenas-Flores could not demonstrate the requisite prejudice to support her ineffective assistance of counsel claim because the State presented sufficient independent evidence of the corpus delicti).

evidence[,] . . . not [a] constitutionally mandated" sufficiency of the evidence rule. *Id.* at 507-08. Acting Chief Judge Bradley A. Maxa concurred in the result but argued that procedurally, Cardenas-Flores was not precluded from raising her corpus delicti challenge for the first time on appeal. *Id.* at 522.

Cardenas-Flores filed a petition for review in this court, which we granted. *State v. Cardenas-Flores*, 186 Wn.2d 1017, 383 P.3d 1015 (2016).

## ANALYSIS

This case presents four issues for review: (1) whether corpus delicti may be raised for the first time on appeal; (2) if so, whether the State presented sufficient evidence to establish the corpus delicti; (3) whether the State presented sufficient evidence to sustain a conviction for second degree child assault; and (4) whether jury instructions properly informed the jury that a parent who intentionally touches a child and causes harm may be convicted of assault. We address each issue in turn.

> I. A Criminal Defendant May Raise Corpus Delicti for the First Time on Appeal Because It Permeates Any Conclusion on the Sufficiency of the Evidence To Convict

We must first decide whether to consider Cardenas-Flores's corpus delicti challenge on appeal. Our decision turns on how we characterize corpus delicti: as concerning only the admissibility of a confession, or as affecting any review of the sufficiency of the evidence to convict. At trial, either characterization should yield

the same result if the defendant's confession is uncorroborated. Under the admissibility characterization, the jury will not be allowed to hear the defendant's confession and without other evidence, the State cannot prove its case. Under the sufficiency characterization, the prosecution should be dismissed for want of evidence. The two characterizations, however, yield different results on appeal. Under the admissibility characterization, the defendant's corpus delicti challenge will be deemed waived if not raised at trial, as it is only an evidentiary objection. Under the sufficiency characterization, the defendant can raise corpus delicti for the first time on appeal, as it is a challenge to the sufficiency of the evidence. *See State v. McGill*, 50 Kan. App. 2d 208, 257-58, 328 P.3d 554 (2014) (Atcheson, J., dissenting) (explaining consequences of two characterizations of corpus delicti).

Cardenas-Flores relies on our opinion in *Dow*, which described corpus delicti as a rule of both admissibility and sufficiency. Pet. for Review at 10 (citing *Dow*, 168 Wn.2d at 251). She criticizes the Court of Appeals for failing to interpret her corpus delicti claim as a sufficiency of the evidence claim that can be raised for the first time on appeal. *Id.* at 10-11. The State counters that corpus delicti is a rule of evidence, and that any challenge is waived absent a timely objection at trial. Suppl. Br. of Resp't at 15. We believe that Cardenas-Flores has the better argument based

on our case law, the United States Supreme Court's case law, and the underlying purpose of the corpus delicti rule.

### A. While Corpus Delicti Contains Traces of an Admissibility Rule, It Is Principally a Rule of Sufficiency

"Corpus delicti means the 'body of the crime.'" *State v. Brockob*, 159 Wn.2d 311, 327, 150 P.3d 59 (2006) (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 655). The body of the crime "usually consists of two elements: (1) an injury or loss (*e.g.*, death or missing property) and (2) someone's criminal act as the cause thereof." *City of Bremerton v. Corbett*, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986). The corpus delicti "must be proved by evidence sufficient to support the inference that" a crime took place, and the defendant's confession "alone is not sufficient to establish that a crime took place." *Brockob*, 159 Wn.2d at 327-28. Specifically, "[t]he State must present other independent evidence . . . that the crime a defendant *described in the* [*confession*] actually occurred." *Id.* at 328.[3] Essentially, corpus delicti is a corroboration rule that "prevent[s] defendants from being unjustly convicted based on confessions alone." *Dow*, 168 Wn.2d at 249; *see*

---

[3] A variety of terms have been used to describe defendants' statements when analyzing corpus delicti claims. *Brockob*, 159 Wn.2d at 328 n.11 ("referring to 'admissions,' 'confessions,' 'statements,' 'incriminating statements,' 'inculpatory statements,' 'exculpatory statements,' and 'facially neutral' statements" (quoting *Aten*, 130 Wn.2d at 655-57)). We generally refer to them as confessions.

*also* 1 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 145, at 802 n.7 (7th ed. 2013) ("The corroboration requirement rests upon the dual assumptions that [the] risk[] of inaccurac[ies] are serious . . . and that juries are likely to accept confessions uncritically.").

Washington appears to have used the rule in at least two distinct senses. First, it refers to the sufficiency of the evidence to support a conviction. *State v. Angulo*, 148 Wn. App. 642, 648, 200 P.3d 752 (2009), *review denied*, 170 Wn.2d 1009 (2010); *see also State v. Marcy*, 189 Wash. 620, 623, 66 P.2d 846 (1937) ("'[B]efore there can be a lawful conviction of a crime, the corpus delicti . . . must be proved.'" (quoting 7 RULING CASE LAW *View Upholding Preference Given Stockholder or Officer* § 774 (1915))). Second, it refers to the evidentiary foundation required before admitting a defendant's confession into evidence. *Angulo*, 148 Wn. App. at 648; *see also Brockob*, 159 Wn.2d at 339 (finding that one of the defendant's confessions was properly admitted under the corpus delicti rule). Unsure of this duality, a few Court of Appeals opinions have applied a forfeiture rule when the defendant failed to challenge the admissibility of a confession at trial on corpus delicti grounds. *See State v. C.D.W.*, 76 Wn. App. 761, 762-63, 887 P.2d 911 (1995) (holding that the defendant waived his corpus delicti challenge on appeal by failing to raise it at trial because corpus delicti is not constitutionally mandated, and is

therefore only a rule of evidence); *State v. Page*, 147 Wn. App. 849, 855, 199 P.3d 437 (2008) ("[The defendant] did not raise this issue at trial, so we need not consider the issue directly on appeal."); *State v. Dodgen*, 81 Wn. App. 487, 492, 915 P.2d 531 (1996) ("The corpus delicti rule is a judicially created rule of evidence, not a constitutional sufficiency of the evidence requirement."). While these courts have couched corpus delicti as only an evidentiary rule, our cases confirm that corpus delicti permeates considerations of sufficiency of the evidence. This is apparent not only in the language we have used to describe corpus delicti, but also in the remedy we have awarded after a finding of insufficient evidence of the corpus delicti and the charge.[4]

Originally, this court used corpus delicti in the sufficiency context to describe the State's burden of proving the body of the crime beyond a reasonable doubt. For

---

[4] While the concurrence agrees that corpus delicti refers to both the sufficiency of the evidence to support a conviction and the evidentiary foundation required before admitting a defendant's confession into evidence, the concurrence concludes that corpus delicti and "the corpus delicti rule" are distinct concepts. Concurrence at 2. For this proposition, the only case the concurrence cites to is *City of Bremerton v. Corbett*, 42 Wn. App. 45, 49, 708 P.2d 408 (1985), *aff'd*, 106 Wn.2d 569, which cites to *State v. Fagundes*, 26 Wn. App. 477, 614 P.2d 198, 625 P.2d 179 (1980). While the court in *Corbett* explicitly stated that corpus delicti and the corpus delicti rule "are different," 42 Wn. App. at 49 n.2, the court in *Fagundes* did not distinguish between the two and stated only that "corpus delicti must be considered for two purposes," 26 Wn. App. at 484. This aligns with *Dow*, in which we stated corpus delicti, as a whole, pertains both to admissibility and sufficiency. *See* 168 Wn.2d at 251. We treat corpus delicti and the corpus delicti rule as a single concept with distinct aspects.

-10-

example, in *State v. Pienick*, 46 Wash. 522, 523, 525, 529, 90 P. 645 (1907), this court reversed the defendant's conviction because the evidence was insufficient to establish the corpus delicti and to convict, but remanded for a new trial based on the defendant's motion. The court in *Pienick* suggested that it would have dismissed the charge, rather than remand for a new trial, had the defendant moved for a directed verdict before the case was submitted to the jury. *Id.* at 529. Similarly, in *State v. Marselle*, 43 Wash. 273, 276-77, 86 P. 586 (1906), this court reversed the defendant's conviction because the evidence was insufficient to establish corpus delicti and to convict, but remanded for a new trial because there was evidence of a lesser included offense. The court in *Marselle* explained that "[b]ut for this element of the lesser offense, the [defendant] would, upon the record, be entitled to a discharge instead of a new trial." *Id.* at 277. Indeed, in conducting the corpus delicti analysis, the court in *Marselle* stated, "A confession not corroborated by independent evidence of the *corpus delicti* is not sufficient to *support a conviction* of crime." *Id.* at 276 (second emphasis added).

Our more recent cases also regard corpus delicti as a sufficiency of the evidence rule. In *Aten*, the defendant confessed to suffocating a child in her care. 130 Wn.2d at 648-50. Death was attributed to sudden infant death syndrome, but the cause, whether natural or manual strangulation, could not be determined. *Id.* at

-11-

646. At trial, the defendant moved to exclude her confessions and moved to dismiss the charge. *Id.* at 654. The trial court denied both motions and convicted the defendant as charged. *Id.* The Court of Appeals reversed the conviction and dismissed the charge. *Id.* at 655. This court affirmed based on its conclusion that there was insufficient independent evidence of the corpus delicti and insufficient evidence to convict. *Id.* at 662, 667. Notably, in upholding the dismissal, this court stated that the "corpus delicti issue permeate[d] any conclusion on sufficiency of the evidence."[5] *Id.* at 667; *see also State v. Ray*, 130 Wn.2d 673, 681, 926 P.2d 904 (1996) (reinstating the trial court's order dismissing the charge because the State failed to establish corpus delicti independent of the defendant's confession).

This court most recently examined corpus delicti in *Dow*. The defendant there was charged with molesting a child. 168 Wn.2d at 247. The only evidence at trial was the defendant's recorded out-of-court statements. *Id.* at 246-47. The defendant sought to exclude his statements about the alleged abuse as inadmissible for failure to satisfy corpus delicti. *Id.* at 247. The State conceded it had no other corroborating

---

[5] The concurrence contends that the sufficiency characterization is obsolete because defendants now challenge the sufficiency of the evidence under the standard announced in *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) and *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (plurality opinion). Concurrence at 5. But this ignores *Aten*, 130 Wn.2d at 667, and *Dow*, 168 Wn.2d at 251, both of which were decided after *Green* and linked corpus delicti to sufficiency of the evidence review.

evidence, but argued that the defendant's statements were admissible under RCW 10.58.035.[6] *Id.* After finding the statements were exculpatory and insufficient to convict, the trial court dismissed the case. *Id.* at 248.

This court affirmed, holding that even though the statements were trustworthy and admissible under RCW 10.58.035, the trial court did not err because the statute pertains only to "admissibility" of statements and does not relieve the State of its burden to establish corpus delicti and present sufficient evidence to support a conviction. *Id.* at 253-54. Because there was no independent corroborating evidence of the defendant's statements to the police and the State had no other evidence besides the defendant's statements to prove its case, the trial court properly dismissed the case. *Id.* at 254-55.

*Dow*'s characterization of corpus delicti frames the primary issue before us. We stated in *Dow* that even though corpus delicti is "not constitutionally mandated" under the Washington Constitution or its federal counterpart, the rule operates as

---

[6] RCW 10.58.035(1) provides that "where independent proof of the corpus delicti is absent, and the alleged victim of the crime is dead or incompetent to testify, a lawfully obtained and otherwise admissible . . . statement of the defendant shall be admissible into evidence if there is substantial independent evidence that would tend to establish the trustworthiness of the . . . statement." The legislature provided a nonexclusive list of factors to consider in determining trustworthiness. *See* RCW 10.58.035(2).

"both a rule of admissibility and a rule of sufficiency." *Id.* at 249-51.[7] In explaining

and applying the rule to the defendant's statements, we noted that our "corpus delicti

cases have always required sufficient evidence independent of a defendant's

confession to support a conviction [and] RCW 10.58.035 does nothing to change

this requirement." *Id.* at 254. In other words, even if the requirements of RCW

10.58.035 are met, "something more must exist in order to support the State's case,

both under the statute and the corpus delicti doctrine." *Id.* at 253; *see also* RCW

10.58.035(4) ("Nothing in this section may be construed to prevent the defendant

from arguing . . . that the *evidence is otherwise insufficient to convict.*" (emphasis

added)). The court in *Dow* thus reaffirmed our longstanding view that, at heart,

corpus delicti is a rule of sufficiency.

The Court of Appeals below distinguished *Dow* on the ground that the

defendant in that case had timely moved to suppress his statements for lack of corpus

delicti. *Cardenas-Flores*, 194 Wn. App. at 508 (citing *State v. Dow*, 142 Wn. App.

---

[7] The *Dow* court properly used the term "sufficiency" to describe both the quantum of proof necessary to corroborate a confession (admissibility) and the quantum of proof necessary to sustain a conviction (sufficiency of the evidence). 168 Wn.2d at 249, 254 (corpus delicti "tests the sufficiency or adequacy of evidence, other than a defendant's confession, to corroborate the confession"; corpus delicti requires "sufficient evidence independent of a defendant's confession to support a conviction" because "[t]he purpose of the corpus delicti rule is to prevent defendants from being unjustly convicted based on confessions alone").

971, 974, 176 P.3d 597 (2008), *rev'd*, 168 Wn.2d 243). This procedural difference is immaterial; as *Dow* made clear, corpus delicti relates to questions of evidentiary sufficiency, which appellate courts consider for the first time on review. Indeed, following *Dow*, this court remanded a case in which the defendant failed to raise a corpus delicti challenge at trial. *State v. Grogan*, 147 Wn. App. 511, 195 P.3d 1017 (2008) (*Grogan* I), *aff'd on remand*, 158 Wn. App. 272, 246 P.3d 196 (2010) (*Grogan* II). In *Grogan* I, the Court of Appeals refused to entertain the defendant's corpus delicti challenge because the defendant raised it for the first time on appeal. 147 Wn. App. at 519. This court then accepted review and remanded for reconsideration in light of *Dow*. Order, *State v. Grogan*, No. 82609-9 (Wash. June 2, 2010). On remand, the Court of Appeals properly entertained the defendant's corpus delicti challenge. *Grogan* II, 158 Wn. App. at 277. In doing so, the appeals court stated:

> The corpus delicti rule does not merely set a standard for the admission of statements into evidence; it establishes that *an uncorroborated confession is insufficient evidence to sustain a conviction as a matter of law* unless independent proof shows that a crime occurred.

*Id.* at 275 (emphasis added).

Having established that Washington case law treats corpus delicti as a rule of sufficiency, not merely a rule of evidence, we consider our rule in the broader context of United States Supreme Court decisions interpreting corpus delicti.

-15-

B. United States Supreme Court Case Law Embracing a "Trustworthiness" Standard Recognizes Corpus Delicti as a Rule of Sufficiency

Criticized as outdated, corpus delicti has been modified in some jurisdictions and abandoned in others. *See* 1 BROUN, *supra*, § 148, at 816-17 & n.2 (collecting authorities); *see also Ray*, 130 Wn.2d at 685-86 (Talmadge, J., concurring) (collecting cases from states that have modified or abandoned corpus delicti). "Notably, we are among a minority of courts that has declined to adopt a more relaxed rule." *Brockob*, 159 Wn.2d at 328. Generally, there are two variations of the corpus delicti rule: Washington's "corroboration" rule and the United States Supreme Court's "trustworthiness" rule. *See id.* at 328-29.

"Under the Washington rule, . . . the evidence must independently *corroborate*, or confirm, a defendant's" confession. *Id.* "The independent evidence need not be of such a character as would establish the *corpus delicti* beyond a reasonable doubt, or even by a preponderance of the proof. It is sufficient if it *prima facie* establishes the *corpus delicti*." *State v. Meyer*, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951). "Prima facie corroboration . . . exists if the independent evidence supports a 'logical and reasonable inference of the facts'" the State seeks to prove. *Brockob*, 159 Wn.2d at 328 (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 656).

Federal courts and some state courts have rejected this corroboration rule for confessions in favor of a trustworthiness standard announced by the United States Supreme Court in *Opper v. United States*, 348 U.S. 84, 75 S. Ct. 158, 99 L. Ed. 101 (1954). *See* 1 BROUN, *supra*, § 147, at 813-14. Under this federal standard, the Government "need only present independent evidence sufficient to establish that the [confession] is trustworthy." *Brockob*, 159 Wn.2d at 328. The United States Supreme Court stated,

> [T]he better rule [is] that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt.

*Opper*, 348 U.S. at 93 (citation omitted). This passage demonstrates that the Supreme Court has relaxed the requirement that independent evidence support the whole of the corpus delicti. Instead, the independent evidence must corroborate the confession's description of the crime (the "essential facts admitted") and establish other elements of the crime not described in the confession (the "other necessary elements of the offense"). *Id.*; *see also Smith v. United States*, 348 U.S. 147, 156,

75 S. Ct. 194, 99 L. Ed. 192 (1954) ("All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused.").

In opting for a more relaxed rule, the Supreme Court did not change the requirement that a confession alone cannot sustain a conviction. Rather, it suggested that the trustworthiness rule, like Washington's corroboration rule, is concerned with sufficiency of the evidence. In *Opper*, the Supreme Court stated that "the essential facts admitted" plus "the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." 348 U.S. at 93. And in *Smith*, the Supreme Court stated that corpus delicti "prevent[s] 'errors in convictions based upon untrue confessions alone'" and "restrict[s] . . . the power of the jury to convict." 348 U.S. at 153 (quoting *Warszower v. United States*, 312 U.S. 342, 347, 61 S. Ct. 603, 85 L. Ed. 876 (1941)). Holding that the corpus delicti was satisfied, the Supreme Court stated that there was "sufficient corroboration . . . to permit the case to go to the jury." *Id.* at 159. *Opper* and *Smith* therefore demonstrate that corpus delicti operates as a rule of sufficiency. *See also United States v. Calderon*, 348 U.S. 160, 161, 75 S. Ct. 186, 99 L. Ed. 202 (1954) ("The issue in this case is similar to the question presented in *Smith* . . . . The admissibility of [the defendant's]

statements is not questioned."); 1 BROUN, *supra*, § 148, at 817 (recommending *Opper*'s trustworthiness rule and explaining that there "is insufficient justification for treating the rule as one related to admissibility of [a] defendant's admissions").[8]

Both Washington and federal case law recognize that corpus delicti operates primarily as a rule of sufficiency. While the "trustworthiness" rule and the "corroboration" rule differ in application, neither rule regards corpus delicti as merely an evidentiary challenge subject to preservation of error rules. As we will now explain, sound practical concerns support maintaining the focus on sufficiency.

### C. Recognizing Corpus Delicti as a Rule of Sufficiency Better Adheres to Its Purpose and Practical Value

As noted, the underlying purpose of corpus delicti is to prevent convictions based solely on confessions. *Dow*, 168 Wn.2d at 249. Focusing on sufficiency recognizes this underlying purpose because a defendant is entitled to an acquittal if the State fails to satisfy corpus delicti and offer proof of each element of the crime. Thus, an appellate court must reverse and dismiss a conviction that rests solely on

---

[8] The court in *Dow* recognized this and found that the legislature had adopted the *Opper* trustworthiness standard only insofar as it pertained to admissibility. *See Dow*, 168 Wn.2d at 251 (the *Opper* rule does not "permit a defendant's confession to be the sole evidence used to support a conviction"), 253 ("In contrast to the *Opper* rule . . . RCW 10.58.035 addresses only admissibility."); *see also* FINAL B. REP. ON ENGROSSED H.B. 1427, at 2, 58th Leg., Reg. Sess. (Wash. 2003) (under *Opper*, a confession "may be *admitted* . . . if there is substantial independent evidence that tends to establish the trustworthiness of the confession" (emphasis added)).

an uncorroborated confession, even if the confession would be sufficient to establish all the elements of the crime.

In contrast, under the admissibility approach that deems a defendant's corpus delicti challenge waived absent an objection at trial, the appealing defendant would have to rely on a separate due process sufficiency challenge to contest the evidence used to convict. Under such a challenge, reviewing courts examine whether "any rational trier of fact could have found guilt beyond a reasonable doubt," viewing the evidence, including the erroneously admitted confession, in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A purely evidentiary corpus delicti rule therefore would not further its purpose of preventing the introduction of uncorroborated confessions because, should a false confession be admitted, the reviewing court would accept it as true. *See* 1 BROUN, *supra*, § 145, at 805 ("On balance, there is no reason for the corroboration requirement to be framed or discussed as one of admissibility. The courts should stop pretending that it is a rule of this sort.").

At least three practical values support the conclusion that corpus delicti should be regarded as pertaining to sufficiency of the evidence. First, the sufficiency approach acknowledges the reality that individuals sometimes confess to imaginary crimes. *See State v. Unga*, 165 Wn.2d 95, 115 n.10, 196 P.3d 645 (2008) ("We must

disabuse ourselves of the notion that an innocent person would not confess to a crime he or she did not commit."); Steven A. Drizin & Richard A. Leo, *The Problem of False Confessions in the Post-DNA World*, 82 N.C. L. REV. 891, 920-21 (2004) ("While it is not presently possible to provide a valid quantitative estimate of the incidence or prevalence of interrogation-induced false confessions in America, the research literature has established that such confessions occur with alarming frequency. Social psychologists, criminologists, sociologists, legal scholars, and independent writers have documented so many examples of interrogation-induced false confession[s] in recent years that there is no longer any dispute about their occurrence." (footnotes omitted)).

Second, the sufficiency approach properly focuses on the merits of a claim without conferring a windfall to either party. Were we to hold that corpus delicti is purely an evidentiary rule, a defendant who failed to raise corpus delicti at trial would likely raise the issue on appeal through the lens of an ineffective assistance of counsel claim. *See Angulo*, 148 Wn. App. at 647, 659 (entertaining the defendant's ineffective assistance of counsel claim for counsel's failure to raise corpus delicti at trial); *Page*, 147 Wn. App. at 855, 858 (same); *C.D.W.*, 76 Wn. App. at 764-65 (same). Cardenas-Flores did just that, and the Court of Appeals therefore indirectly considered the merits of her corpus delicti challenge. *Cardenas-Flores*,

-21-

194 Wn. App. at 501, 517-18 (rejecting Cardenas-Flores's ineffective assistance of counsel claim because the State presented sufficient independent evidence of the corpus delicti). This seems an inefficient and inadequate approach when sufficiency remains, at heart, the focus of any review.

Third, recognizing that corpus delicti is a sufficiency rule accords with the remedy that courts afford when evidence is insufficient: dismissal of unsupported charges. On appeal, any error in the admission of a confession under corpus delicti is necessarily considered in light of *all the evidence at trial*, not simply the foundation laid when the confession is offered. *See State v. Lung*, 70 Wn.2d 365, 372, 374, 423 P.2d 72 (1967) (affirming the trial court's admission of the defendant's confession before the State established the corpus delicti because the "facts and circumstances which established the corpus delicti were overwhelming"); *see also* 1 BROUN, *supra*, § 145, at 803 (noting that appellate courts are "unwilling to enforce any requirement of admissibility by reversing convictions supported by sufficient evidence because the trial court failed to require that evidence before admitting the confession"). "[A]ny formal requirement of admissibility" is thus "relatively meaningless" because a trial court's "noncompliance" will not result in reversal. 1 BROUN, *supra*, § 145, at 804. A finding of insufficiency, on the other hand, necessitates reversal and dismissal. Indeed, "most appellate courts treat the

corroboration requirement as applied on appellate review as relating to evidence sufficiency, perhaps as well as admissibility. Consequently, a convicted defendant who prevails on appeal is entitled to acquittal." *Id.*

These practical considerations support our holding that corpus delicti is, at heart, a rule of sufficiency. While corpus delicti also concerns admissibility, as modified by RCW 10.58.035, focusing on it as a rule of sufficiency prevents convictions based on uncorroborated confessions alone and furthers its purpose and practical values. Because corpus delicti pertains to sufficiency of the evidence, we conclude it can be addressed for the first time on appeal, and we disapprove of Court of Appeals opinions that have held to the contrary. We now turn to the merits of Cardenas-Flores's claims.

II.    The State Presented Adequate Evidence of Corpus Delicti

Given our conclusion that corpus delicti can be raised for the first time on appeal, we consider the merits of Cardenas-Flores's claims. Cardenas-Flores argues that the State failed to prove the corpus delicti of second degree child assault. Pet'r's Suppl. Br. at 13. She argues that the State was required, but failed, to introduce independent evidence proving she intended to assault her child. *Id.* at 15-17. Even if the State was not required to prove her specific intent, Cardenas-Flores contends the State still failed to prove the corpus delicti because the medical evidence and

testimony did not establish a criminal cause for her son's injury. *Id.* at 15, 17-18. We reject this argument.

We have consistently held that corpus delicti involves two elements: (1) an injury or loss (2) caused by someone's criminal act. *Corbett,* 106 Wn.2d at 573-74. While the State must establish the mental element of the crime beyond a reasonable doubt to sustain a conviction, mens rea is not required to satisfy corpus delicti. *See id.*[9]

To establish the corpus delicti of second degree child assault, the State had to present prima facie evidence that (1) a specific injury occurred and (2) someone's criminal act likely caused the injury. *See id.* As described above, the independent evidence need not be of such a character that would establish

---

[9] Similarly, we have not required criminal elements such as identity to be established by independent evidence to satisfy corpus delicti. *See Aten,* 130 Wn.2d at 655 (corpus delicti consists of two elements); *Lung,* 70 Wn.2d at 371 (same); *Meyer,* 37 Wn.2d at 763 (same); *see also Angulo,* 148 Wn. App. at 656 (corpus delicti rule satisfied because independent evidence corroborated the "gravamen" of child rape—a sexual act with a minor). This is consistent with the generally prevailing view that corroborating evidence need "only tend to show the 'major' or 'essential' harm involved in the offense charged and not all of the elements technically distinguished." 1 BROUN, *supra,* § 146, at 810. In *Brockob,* we stated that independent evidence must corroborate "not just *a crime* but *the specific crime* with which the defendant has been charged." 159 Wn.2d at 329. We ultimately held there that mere unlawful possession of Sudafed, a misdemeanor, is insufficient to establish the corpus delicti of possession of a controlled substance with intent to manufacture methamphetamine, a felony. *Id.* at 331-33. We read *Brockob* as requiring independent evidence of the gravamen of the crime charged, i.e., methamphetamine production, and thus consistent with the general rule.

the corpus delicti beyond a reasonable doubt or even by a preponderance of the proof. *Meyer*, 37 Wn.2d at 763. The evidence is sufficient if it supports a logical and reasonable inference of the facts the State seeks to prove. *Brockob*, 159 Wn.2d at 328. The independent evidence "'must be consistent with guilt and inconsistent with a[] hypothesis of innocence.'" *Id.* at 329 (alteration in original) (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 660). In determining whether there is sufficient evidence of the corpus delicti independent of the defendant's statements, we assume the "truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State." *Aten*, 130 Wn.2d at 658.

Sufficient evidence supported the fact that the crime of second degree child assault occurred. The earlier X-rays of C.A.'s left leg taken after the rollover accident showed no injury. RP (Aug. 18, 2014) at 59, 61. Multiple doctors agreed that these X-rays were "normal." RP (Aug. 19, 2014) at 156, 182-83. The second set of X-rays taken at the hospital showed no healing around that wound that would have been present had the rollover injury caused the fracture. RP (Aug. 18, 2014) at 68-69. The amount of force necessary to cause C.A.'s injury was more than would occur in everyday life and consisted of a compression and twisting of C.A.'s leg. *Id.* at 76, 80. And nothing suggested that C.A. had a genetic disorder or that the fracture was self-inflicted by a nonambulatory, month-old child. *Id.* at 83. This evidence

supports the logical inference that nonaccidental trauma caused C.A.'s fracture. Further, it is consistent with guilt and inconsistent with innocence, establishing prima facie the corpus delicti of the crime of second degree child assault. The State presented sufficient evidence to satisfy corpus delicti in this case.

III.    The State Presented Sufficient Evidence to Convict Cardenas-Flores of Second Degree Child Assault

Cardenas-Flores next contends that regardless of whether corpus delicti was established, the State failed to present sufficient evidence that she intentionally assaulted C.A. Pet'r's Suppl. Br. at 16-18. Though she did not clearly present this argument in her petition for review, it is appropriate to liberally construe her insufficient evidence claim and thus reach this issue. *See* RAP 1.2(a) ("These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits."). Cardenas-Flores does not succeed on this claim.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201. When a defendant challenges the sufficiency of the evidence, he or she admits the truth of all of the State's evidence. *Id.*; *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). In such cases, appellate courts view the evidence in the light most favorable

to the State, drawing reasonable inferences in the State's favor. *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are to be considered equally reliable. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). "Credibility determinations are for the trier of fact" and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To convict the defendant of second degree child assault based on battery,[10] the State was required to prove that Cardenas-Flores (1) intentionally assaulted another person (2) under the age of 13 and thereby (3) recklessly inflicted (4) substantial bodily harm. *See* RCW 9A.36.021(1)(a), .130(1)(a).

"Unlike the other forms of assault, assault by actual battery (physical contact) does not require proof of specific intent to cause apprehension or inflict substantial bodily harm." *State v. Stevens*, 158 Wn.2d 304, 314, 143 P.3d 817 (2006). "Instead, assault by actual battery is an intentional touching or striking of another person that is harmful or offensive, regardless whether it results in any physical injury." *Id.* Rather than "'specific intent to inflict harm or cause apprehension . . .

---

[10] The definition of "assault" "is threefold and includes common law definitions of battery, attempted battery, and assault." *State v. Stevens*, 158 Wn.2d 304, 313, 143 P.3d 817 (2006) (Madsen, J. dissenting). "Battery" refers to physical contact; "attempted battery" refers to attempt to cause injury; "common law assault" refers to attempt to cause fear of injury. *Id.* at 314. Cardenas-Flores's case fits into the first category, as C.A. was physically harmed.

battery requires intent to do the physical act constituting assault.'" *Id.* (alteration in original) (quoting *State v. Hall*, 104 Wn. App. 56, 62, 14 P.3d 884 (2000)).

Here, because the State satisfied corpus delicti, Cardenas-Flores's statements to the police were properly considered by the jury. She admitted to the officers that she had pushed her son's leg down and out to straighten it. RP (Aug. 19, 2014) at 201-02. As a result, C.A. cried differently from his normal cry. *Id.* at 202. Cardenas-Flores also admitted that she knew her actions had caused her son's injury. *Id.* These statements plus the physical evidence introduced at trial demonstrate sufficient evidence that Cardenas-Flores intentionally committed the physical act of assault—in this case, pushing and straightening C.A.'s leg. The jury properly considered her inculpatory statements and judged her credibility. The State presented sufficient evidence of assault by actual battery to sustain Cardenas-Flores's conviction.

IV. The Instructions Properly Informed the Jury of the Essential Elements of Second Degree Assault of a Child

Lastly, Cardenas-Flores argues that the jury instructions were erroneous because a parent who intentionally touches a child and causes harm cannot be convicted of assault. Pet'r's Suppl. Br. at 7-13. Although Cardenas-Flores failed to object to the instructions at trial, which generally precludes appellate review of jury

-28-

instructions, *State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988) (citing CrR 6.15(c)), instructional errors of constitutional magnitude may be challenged for the first time on review. RAP 2.5(a)(3). Jury instructions are generally sufficient if they "'inform the jury of the applicable law, [do] not mislead the jury, and permit each party to argue its theory of the case.'" *State v. Gordon*, 172 Wn.2d 671, 677, 260 P.3d 884 (2011) (quoting *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007)). However, the "failure to instruct a jury on every element of a charged crime is an error of constitutional magnitude." *Id.* We consider Cardenas-Flores's challenge in that context. *See Scott*, 110 Wn.2d at 689.

Cardenas-Flores was charged with second degree assault of a child. The relevant statutory provisions explain that

> (1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
> (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm.

RCW 9A.36.021. And

> (1) A person eighteen years of age or older is guilty of the crime of assault of a child in the second degree if the child is under the age of thirteen and the person:
> (a) Commits the crime of assault in the second degree, as defined in RCW 9A.36.021, against a child.

RCW 9A.36.130.

The jury was given the following instructions:

> A person commits the crime of assault in the second degree when he intentionally assaults another and thereby recklessly inflicts substantial bodily harm.
>
> An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking . . . is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.
>
> Substantial bodily harm means bodily injury that involves a temporary but substantial disfigurement, or that causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or that causes a fracture of any bodily part.

Clerk's Papers at 19-21 (Instrs. 8-10). These standard instructions defining assault by battery were taken from 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 35.50, at 164 (3d ed. Supp. 2014-15) (WPIC). To convict Cardenas-Flores of second degree child assault, these instructions required the jury to find that Cardenas-Flores intended to do the act, the act was reckless, and the act resulted in an injury.

Essentially, Cardenas-Flores would have us carve out an exception to assault for a parent whose intentional touch harms a child. She reasons that parents have a unique right and duty to engage in intentional touching of their children, and that small children increase the potential for harm by "strenuously resisting the parent's touch." Pet'r's Suppl. Br. at 6. She argues that a parent who lawfully intentionally touches a child and causes injury should not be convicted of assault. *Id.* at 6-7.

Accordingly, she contends her conviction should be reversed because the instructions given did not require proof of "criminal intent." Pet. for Review at 14-16 (assault requires "proof of an 'unlawful[] touching . . . with criminal intent.'" (alteration in original) (quoting *State v. Hahn*, 174 Wn.2d 126, 129, 271 P.3d 892 (2012))). Cardenas-Flores appears to contend that "criminal intent" requires some form of malice. But she misconstrues our decision in *Hahn*, which considered a jury instruction for solicitation to commit fourth degree assault as a lesser included offense of solicitation to commit first degree murder. 174 Wn.2d at 129-30. In *Hahn*, we generally discussed lesser included offense instructions and common law assault. *Id.* at 129. We did not define "criminal intent," and our only mention of it was a passing reference in listing the different forms of common law assault. *Id.* Nothing in *Hahn* is inconsistent with our case law regarding assault by battery, which concludes that "criminal intent" means the intent to do the act constituting assault, not that the act is malicious. *See Stevens*, 158 Wn.2d at 314; *State v. Keend*, 140 Wn. App. 858, 867, 166 P.3d 1268 (2007) ("[A]ssault by battery simply requires intent to do the physical act constituting assault.").

Cardenas-Flores also asserts that the WPIC's bracketed phrase "with unlawful force" should have been included in the jury instructions. Pet'r's Suppl. Br. at 9. This phrase would have alerted jurors that the State was obligated to prove unlawful

-31-

use of force. *Id.* at 10. This argument fails, as Cardenas-Flores did not argue that her use of force in this case was lawful. Rather, she denied that she touched C.A. and caused his femur fracture, claiming that Carlos's accidental rollover had caused the injury. RP (Aug. 19, 2014) at 290. Including the bracketed WPIC language would not have assisted Cardenas-Flores's case and in fact may have confused jurors. The pattern jury instructions given were adequate to inform jurors of the applicable law and allowed Cardenas-Flores to argue her theory of the case. She does not show reversible error here.

## CONCLUSION

We reaffirm *Dow* and hold that corpus delicti pertains to both admissibility and sufficiency of the evidence. Because it pertains to sufficiency, a criminal defendant need not object at trial to raise the issue on appeal. Accordingly, we entertain Cardenas-Flores's corpus delicti claim. However, because we conclude that the State presented sufficient evidence of corpus delicti and of the crime of second degree child assault, and that the jury instructions were adequate, we affirm Cardenas-Flores's conviction.

_Stephens, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Madsen, J._

_Wiggins, J._

_González, J._

_Owens, J._

No. 93385-5

GONZÁLEZ, J. (concurring)—I concur with the majority in result. The State presented sufficient evidence of corpus delicti to properly admit Zaida Cardenas-Flores's confession, and the State established all elements of second degree child assault beyond a reasonable doubt. I also concur with the majority that the instructions properly informed the jury of the elements of the charged crime. I write separately because in my view, a challenge to the introduction of a confession based on corpus delicti is an evidentiary claim. Cardenas-Flores failed to preserve this error because she did not object at trial and therefore she cannot bring this claim for the first time on appeal.

The central issue before us today is whether a defendant may bring an unpreserved corpus delicti challenge on appeal. To answer this question, we must first determine whether corpus delicti is a rule of evidence that must be preserved or substantive rule of criminal law that may be raised at any point. The majority concludes that our decision in *State v. Dow*, 168 Wn.2d 243, 251, 227 P.3d 1278 (2010) answers both questions. However, a critical examination of that opinion

does not provide so simple and inevitable an explanation as the majority presents. As I will discuss in more detail below, the *Dow* decision created some confusion by characterizing corpus delicti as pertaining both to admissibility and sufficiency of the evidence. *Id* at 249. Before relying on this characterization, we must look to the history of our corpus delicti jurisprudence for guidance. As Justice Holmes once remarked, "[A] page of history is worth a volume of logic." *N.Y. Tr. Co. v. Eisner*, 256 U.S. 345, 349, 41 S. Ct. 506, 65 L. Ed. 963 (1921).

Examining the body of our case law on this subject reveals two significant conclusions. First, corpus delicti and the corpus delicti rule,[1] which I will refer to throughout as the corroboration rule, are interrelated yet distinct concepts. The traditional formulation of corpus delicti consists of an injury brought about by criminal agency, i.e., that a crime was committed by someone. *City of Bremerton v. Corbett*, 106 Wn.2d 569, 574, 723 P.2d 1135 (1986); 3 JOHN HENRY WIGMORE,

---

[1] *Black's Law Dictionary* recognizes this distinction, defining "corpus delicti" differently from the "corpus delicti rule." According to *Black's*, corpus delicti is "[t]he fact of a transgression," "reflect[ing] the simple principle that a crime must be proved to have occurred before anyone can be convicted for having committed it." BLACK'S LAW DICTIONARY 419 (10th ed. 2014). The corpus delicti rule, on the other hand, is "[t]he doctrine that in order to secure a conviction, the prosecution must establish the corpus delicti with corroborating evidence." *Id*. at 420; *see also* 3 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2073, at 2784 (1904) ("The application of all rules of evidence rests with the judge, not the jury; hence, *under this rule requiring the existence of some corroborative evidence of the corpus delicti*, it is for the *trial judge* to say whether there is such evidence." (some emphasis added)). The Court of Appeals also acknowledged that corpus delicti challenges are separate from the corpus delicti rule. The court explained that "[t]here is room here for confusion which might be erased by the use of more descriptive terms." *City of Bremerton v. Corbett*, 42 Wn. App. 45, 49 n.2, 708 P.2d 408 (1985), *aff'd*, 106 Wn.2d 569, 723 P.2d 1135 (1986). "These rules are different and should have different names." *Id*.

EVIDENCE IN TRIALS AT COMMON LAW § 2072, at 2783 (1904). To sustain a conviction, the State must also present proof that the defendant was the actor, but, identity is not part of the corpus delicti. *State v. Meyer*, 37 Wn.2d 759, 763, 226 P.2d 204 (1951). Altogether, the State must prove injury, criminal agency, and the defendant's identity beyond a reasonable doubt. *See id.*; *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion) (whether a rational trier of fact can find the essential elements of the charged crime beyond a reasonable doubt); *State v. Hill*, 83 Wn.2d 558, 560, 520 P.2d 618 (1974) ("[The State] bears the burden of establishing beyond a reasonable doubt the identity of the accused as the person who committed the offense.").

On the other hand, the corroboration rule bars admission of an uncorroborated confession to prove the corpus delicti unless there is independent proof thereof. *Corbett*, 106 Wn.2d at 574. Once corpus delicti has been satisfied, a "'confession may then be considered in connection therewith and the *corpus delicti* established by a combination of the independent proof and the confession.'" *Id.* (quoting *Meyer*, 37 Wn.2d at 763); *accord State v. Aten*, 130 Wn.2d 640, 655-56, 927 P.2d 210 (1996); *State v. Ray*, 130 Wn.2d 673, 679, 926 P.2d 904 (1996); *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995); *State v. Riley*, 121 Wn.2d 22, 32, 846 P.2d 1365 (1993); *State v. Smith*, 115 Wn.2d 775, 781, 801 P.3d 975 (1990); *State v. Ryan*, 103 Wn.2d 165, 178, 691 P.2d 197 (1984). Thus,

corpus delicti and the corroboration rule are related yet distinct concepts. *See People v. LaRosa*, 2013 CO 2, 293 P.3d 567, 572 ("From this corpus delicti concept, we have derived the corpus delicti rule.").

Second, the history of corpus delicti reveals that it was once used to challenge the sufficiency of the evidence. Though not mandated by the state or federal constitutions, *see Dow*, 168 Wn.2d at 249, Washington courts have historically analyzed corpus delicti as challenging the sufficiency of the evidence supporting a conviction and reviewing the evidentiary foundation necessary to introduce a defendant's statement into evidence. *State v. Angulo*, 148 Wn. App. 642, 648, 200 P.3d 752 (2009). The cases examining corpus delicti as an issue of sufficiency were decided in the earliest decades of statehood. *Timmerman v. Territory*, 3 Wash. Terr. 445, 450, 17 P. 624 (1888) (describing the State's burden of proving corpus delicti beyond a reasonable doubt); *State v. Gates*, 28 Wash. 689, 695, 69 P. 385 (1902) (discussing corpus delicti as a matter of sufficiency of the evidence); *State v. Pienick*, 46 Wash. 522, 646-47, 90 P. 645 (1907) (same). Subsequent cases have described corpus delicti as an evidentiary issue. *See, e.g., State v. Marselle*, 43 Wash. 273, 275-76, 86 P. 586 (1906) (reversing a conviction based on erroneous admission of uncorroborated statements and remanding for new trial); *State v. Thomas*, 1 Wn.2d 298, 302, 95 P.2d 1036 (1939) (reviewing trial court's corpus delicti ruling admitting a confession); *Meyer*, 37 Wn.2d at 763-

4

64 (prior to admission of a confession, the State must prove prima facie the corpus delicti of the crime); *State v. Lung*, 70 Wn.2d 365, 372, 423 P.2d 72 (1967) (reviewing trial court's corpus delicti ruling admitting a confession).

The law of constitutional sufficiency of the evidence underwent a sea change when the Supreme Court established the due process sufficiency model in *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Green*, 94 Wn.2d at 221-22 (reconsidering the sufficiency of the evidence). Thereafter, courts reviewed sufficiency challenges as admitting the truth of the State's evidence and whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Notably, we review a *Jackson* sufficiency claim under a similar standard of review as a challenge to corpus delicti. *Compare id.* ("A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."), *with Aten*, 130 Wn.2d at 658 ("In assessing whether there is sufficient evidence of the corpus delicti . . . , this Court assumes the truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State.").

These markedly similar standards of review as well as the historical usage of corpus delicti to challenge sufficiency indicate traditional use of corpus delicti to challenge the sufficiency of the evidence on appeal has been subsumed by the

*Jackson* constitutional due process model. *See* U.S. CONST. amend. V. To establish guilt in a criminal case, the State must prove injury, criminal agency, the defendant's identity, and any statutory elements of a charged crime beyond a reasonable doubt in order to sustain a conviction. *Corbett*, 106 Wn.2d at 573-74 (in addition to corpus delicti, "[t]o sustain a conviction, there also must be proof that the defendant was the actor"); *Jackson*, 443 U.S. at 316-17; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

Corpus delicti therefore is at the heart of a *Jackson* challenge. In this, the majority is correct: traditional corpus delicti pertains to sufficiency of the evidence and may be first raised on appeal—not as an independent corpus delicti claim but as a constitutional sufficiency challenge under *Jackson*. *See* majority at 8-14; *State v. Alvarez*, 128 Wn.2d 1, 9-10, 904 P.2d 754 (1995); RAP 2.5(a).

Washington courts have not explicitly recognized the assimilation of the traditional corpus delicti rule by constitutional due process claims. *Cf. United States v. Brown*, 617 F.3d 857, 861-62 (6th Cir. 2010) (noting the development of modern sufficiency of the evidence rules and the tension between corpus delicti and *Jackson*). Our failure to do so may be due to the fact that the evidentiary corroboration rule continues to exist. *See Angulo*, 148 Wn. App. at 648-52. Moreover, until the current case, this court has never been asked whether the evidentiary corroboration rule may be first raised on appeal. This is likely because

defense counsel generally challenge the issue at trial, thus preserving it for appeal. *See, e.g., State v. Stuhr*, 1 Wn.2d 521, 524, 96 P.2d 479 (1939) (defendant moved to dismiss at trial for failure to prove the alleged crime); *State v. Goranson*, 67 Wn.2d 456, 458-59, 408 P.2d 7 (1965) (dismissing the case for failure to prove corpus delicti at the close of State's evidence); *Corbett*, 106 Wn.2d at 571 (dismissing charges at trial for failure to prove corpus delicti); *Ray*, 130 Wn.2d at 676 (reviewing trial court's ruling that the State established corpus delicti); *Aten*, 130 Wn.2d at 654 (defendant moved to exclude confession and dismiss the charges); *State v. Brockob*, 159 Wn.2d 311, 320, 322, 150 P.3d 59 (2006) (defense counsel raised corpus delicti at trial); *Dow*, 168 Wn.2d at 247 (defendant moved to exclude statements for lack of corpus delicti). When argued below, the Court of Appeals has consistently held that the corroboration rule is strictly evidentiary and must be preserved. *E.g., State v. C.D.W.*, 76 Wn. App. 761, 762-63, 887 P.2d 911 (1995); *State v. Page*, 147 Wn. App. 849, 855, 199 P.3d 437 (2008); *State v. McConville*, 122 Wn. App. 640, 648-50, 94 P.3d 401 (2004); *State v. Dodgen*, 81 Wn. App. 487, 492, 915 P.2d 531 (1996); *State v. Grogan*, 147 Wn. App. 511, 514-15, 195 P.3d 1017 (2008), *aff'd on remand*, 158 Wn. App. 272, 246 P.3d 196 (2010).[2] In light of *Jackson*, an independent corpus delicti sufficiency claim exists

---

[2] The majority notes that we stayed *State v. Grogan*, a case in which the defendant did not raise corpus delicti at trial, pending this court's resolution in *Dow*. Majority at 15 (citing *Grogan*, 147 Wn. App. 511). We remanded *Grogan* for reconsideration in light of *Dow*, *State v. Grogan*, 168

only as an artifact of our state's common law, and it should be respectfully retired to the annals of history.

Turning to the case at hand, I depart from the majority's characterization of corpus delicti as tantamount to a sufficiency of the evidence claim that can be raised for the first time on appeal.[3] Majority at 6-8. To reach this conclusion, the majority relies in large part on this court's language in *Dow*, 168 Wn.2d at 249, stating that corpus delicti is a rule both of admissibility and sufficiency. Ignoring *Jackson*'s assimilation of traditional corpus delicti, the majority's reasoning here would be correct.

But, *Dow* does not exist in a vacuum. To properly understand the decision and how it integrates into our larger jurisprudence on this subject, we must

---

Wn.2d 1039, 234 P.3d 169 (2010), and upon review, the Court of Appeals reached the unpreserved corpus delicti challenge. The majority points to this decision to reach the unpreserved claim as evidence that under *Dow*, corpus delicti can be raised first on appeal. Majority at 15. This is a remarkable interpretation of a remand order, which required reconsideration only in light of *Dow*. Order, *State v. Grogan*, No. 82609-9 (Wash. June 2, 2010). It did not direct the Court of Appeals to reach the unpreserved error, and the order did not explain our reasoning. Therefore, it holds no precedential weight here. *See* WASH. CONST. art. IV, § 2 ("[i]n the determination of causes all decisions of the court shall be given in writing and the grounds of the decision shall be stated").

[3] Despite the repeated declarations from this court that corpus delicti is not constitutionally required, *Dow*, 168 Wn.2d at 249 (citing *Corbett*, 106 Wn.2d at 576), the majority functionally treats a corpus delicti claim as a due process sufficiency of the evidence claim. Presumably, under the majority's analysis, had Cardenas-Flores presented a meritorious corpus delicti claim, her conviction would have been reversed and dismissed with prejudice and double jeopardy attaching thereafter. *See generally* majority at 6-24. The majority fails to recognize the potential consequences of this conclusion for petitioners seeking collateral review. If indeed corpus delicti is akin to a due process sufficiency claim that may be raised for the first time on review, a personal restraint petitioner may potentially avoid the one-year time bar under RCW 10.73.090(1) by claiming an exception. *See* RCW 10.73.100(3)-(4).

8

examine *Dow* in light of *Jackson*. Thus, *Dow*'s language equating corpus delicti with admissibility and sufficiency conflates corpus delicti's traditional role with the current corroboration rule. *Id.* This conflation is easily made, as the *Dow* court had not yet recognized *Jackson* and its effects on Washington's sufficiency law. The opinion goes on to explain that "our corpus delicti cases have always required sufficient evidence independent of a defendant's confession to support a conviction." *Id.* at 254. Because *Jackson* regulates sufficiency claims, *Dow* correctly holds that a conviction based on insufficient evidence cannot stand.[4]

Importantly, the question we must answer today—whether the corroboration rule may be raised for the first time on appeal—was not before the *Dow* court. In that case, the defendant sought at trial to exclude statements he made to the police on the ground that the State failed to satisfy corpus delicti, thus preserving the issue for review. *Id.* at 247. Though the majority dismisses this "procedural difference" as "immaterial," majority at 14, its analysis fails to recognize the critical fact that *Jackson* has subsumed corpus delicti's sufficiency role. A reexamination of our case law to accommodate this critical fact shows that the

---

[4] In addition, the opinion's discussion of RCW 10.58.035 as relating only to admissibility, *Dow*, 168 Wn.2d at 253, also correctly applies to the current corroboration rule. *See also* RCW 10.58.035(4) ("Nothing in this section may be construed to prevent the defendant from arguing . . . that the evidence is otherwise insufficient to convict."). That the "State must still prove every element of the crime charged by evidence independent of the defendant's statement" is further explained as referring to the State's burden of proving all elements of the charged crime beyond a reasonable doubt. *Dow*, 168 Wn.2d at 254.

"procedural difference" between the current case and our decision in *Dow* is hardly immaterial and cannot be so summarily dismissed. Thus, properly understood, *Dow* demonstrates that corpus delicti presently exists only within the *Jackson* constitutional due process model, and that the common law corroboration rule exists post-*Jackson* to challenge the admissibility of a confession.

In addition to reevaluating our corpus delicti case law taking *Jackson* into consideration, we must similarly reexamine the policy rationales underlying the rule. The purpose of the corroboration rule is to prevent convictions based solely on uncorroborated confessions. Majority at 19 (citing *Dow*, 168 Wn.2d at 249). According to the majority, admitting a false confession without an objection at trial would not serve this goal because on review, the court would accept the confession as true. *Id.* at 19-20 (citing KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 145, at 805 (7th ed. 2013)).

But safeguards exist to protect against this situation. Objecting to corpus delicti at trial allows the trial judge to determine the admissibly of a confession. We rely on a trial judge's knowledge and experience to evaluate the corroborative evidence presented and make an evidentiary ruling to admit or exclude a confession. *See, e.g., State v. Mason*, 160 Wn.2d 910, 926, 162 P.3d 396 (2007) (describing the trial judge as an evidentiary "gatekeeper"). Should the defense attorney fail to raise a corroboration rule objection at trial, the defendant is not left

10

without recourse. The defendant may raise corpus delicti under sufficiency of the evidence and under ineffective assistance of counsel. *See Salinas*, 119 Wn.2d at 201 (reviewing claims for insufficient evidence); *C.D.W.*, 76 Wn. App. at 764-65 (reviewing ineffective assistance of counsel for failure to raise corpus delicti). Should a defendant prevail on an ineffective assistance claim, the remedy will be a new trial, *C.D.W.*, 76 Wn. App. at 764-65, at which point the defendant could bring a corroboration rule challenge and move to dismiss the case. *See Dow*, 168 Wn.2d at 254-54 (noting the trial court may dismiss a charge for insufficient evidence (citing *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986))).

Furthermore, because the majority does not recognize the changed landscape of our corpus delicti case law under *Jackson*, it does not acknowledge the practical goals of the corroboration rule such as encouraging parties to make timely objections, providing the trial judge an opportunity to address the issue before it becomes an error on appeal, and promoting the important policies of economy and finality. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). The trial court should be allowed to correct an error in order to avoid the time and expense of an unnecessary appeal if possible. 2A KARL B. TEGLAND, WASHINGTON PRACTICE, RULES PRACTICE RAP 2.5, at 213 (8th ed. 2014) (citing *State v. Scott*, 110 Wn. 2d 682, 757 P.2d 492 (1988)); MCCORMICK, *supra*, § 145, at 805 (admissibility

requirement encourages the trial judge to scrutinize nonconfession evidence prior to the prosecution proving a confession).

This approach also precludes counsel from attempting to gain a tactical advantage by allowing unknown errors to go undetected and then seeking a second trial if the first decision is adverse to the client. And it requires that the State establish admissibility of the defendant's confession before it is admitted, thereby avoiding the possibility that the jury would hear the confession, only to be later asked to set it aside and to determine whether the government's remaining evidence is sufficient to establish the corpus delicti. "'One might doubt whether jurors, having heard the defendant's confession to a heinous crime, could dispassionately discharge this duty.'" *Langevin v. State*, 258 P.3d 866, 870 (Alaska Ct. App. 2011) (quoting *Dodds v. State*, 997 P.2d 536, 541 (Alaska Ct. App. 2000)).

While insufficient evidence claims had once been brought under traditional corpus delicti, the *Jackson* model has replaced this procedural pathway for appellate review. Consequently, such corpus delicti claims no longer exist independently. The corroboration rule, however, exists post-*Jackson* in order to regulate the admissibility of a defendant's confession. A corroboration challenge, like any evidentiary objection, must be raised at trial to preserve it for review.

Here, Cardenas-Flores failed to object and therefore she has waived her right to raise the issue on appeal.

With these observations, I join the majority in result.

González, J.